## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01543

JOSHUA LAPIN,

      Plaintiff,

  v.

AMERICAN AUTO SHIELD, LLC, et al.,

      Defendants.

---

### DEFENDANT FLEX MARKETING GROUP, LLC'S MOTION TO DISMISS UNDER RULE 12(B)(2) AND RULE 12(B)(6)[1]

---

### ISSUES PRESENTED

Plaintiff Joshua Lapin alleges that New York based Defendant Flex Marketing Group, LLC sent him commercial email marketing in violation of S.D. Codified Laws § 37-24-47 (the "SD Email Law"). The issues presented by this motion are:

1. **Personal Jurisdiction.** Specific jurisdiction is proper only if (i) the out-of-state defendant "purposefully directed" its activities at residents of the forum State, and (ii) the plaintiff's alleged injuries "arise out of or relate to those activities." Flex did not direct activities at Colorado and Lapin's injuries arose out of emails sent from New York. Should the Court dismiss this case for lack of personal jurisdiction under Rule 12(b)(2)?

---

[1] This motion is exempted from Local Rule 7.1's meet-and-confer requirement because it is brought under Fed. R. Civ. P. 12 and is exempted from CMA Civ. Prac. Standard 7.1D(a)'s meet-and-confer requirement because the non-movant is proceeding *pro se*.

2.      **Choice of Law.** Colorado courts apply the state law reflecting the most significant relationship to the occurrence and parties. Lapin does not allege any injury or activity relating to this dispute in South Dakota. He alleges injury arising out of emails sent from New York advertising Colorado businesses, that he alleges he received outside South Dakota. Should the Court apply Colorado law and not South Dakota law?

3.      **Failure to State a Claim Under Colorado Law.** Colorado has a commercial-email statute that is similar to South Dakota's law. But Colorado's law does not provide a private right of action to email recipients like Lapin. Should the Court dismiss this case under Rule 12(b)(6) because Lapin fails to state a claim under Colorado law?

4.      **Failure to State a Claim Under South Dakota Law.** The South Dakota statute that Lapin alleges Flex violated imposes liability against an "advertiser" but not against an "initiator." Lapin alleges that Flex is an initiator and that Flex is not an advertiser. If the Court were to apply South Dakota law, should the Court dismiss this case under Rule 12(b)(6) because Lapin fails to state a claim under South Dakota law?

## STATEMENT OF FACTS

**A.      Lapin alleges that Flex is liable under the SD Email Law because of its role in sending commercial email advertising American Auto's products.**

Lapin asserts a single claim for violations of the SD Email Law based on his receipt of 57 commercial emails. (Compl. ¶ 1.) Lapin alleges that Defendants American Auto Shield, LLC ("American Auto") and NRRM, LLC ("CarShield") "advertised" in the Emails and collectively refers to them as "Advertisers." (*Id.* ¶ 1.) Lapin alleges that his claim "arises out of" their conduct in Colorado. (*Id.* ¶ 39.)

Lapin alleges that Flex is domiciled and located in New York. (*Id.* ¶¶ 39, 45–46.) According to Lapin, Flex does not qualify as an "advertiser" as defined in the SD Email Law, which is "a person or entity that advertises through the use" of commercial email.

(*Id.* ¶ 7 (citing S.D. Codified Laws § 37-24-41); *see also id.* ¶ 36). Rather, Lapin alleges that Flex is an "initiator" which the statute defines as one who "transmit[s] or cause[s] to be transmitted a commercial e-mail advertisement or assist[s] in the transmission of a commercial e-mail advertisement by providing electronic mail addresses where the advertisement may be sent…" (*Id.*).

Lapin claims that Flex is responsible for sending 34 of the Emails. (*Id.* ¶¶ 1, 8, 11.) He seeks per-email statutory liquidated damages against Flex "for its role in sending, or ('Initiating')" the 34 emails. (Compl. ¶ 37.) He alleges that Flex is vicariously liable "under a classic aiding and abetting theory" because it "sent and 'caused to be transmitted' the illegal emails in which" CarShield and American Auto "are alleged to have illegally Advertised [*sic*] within." (*Id.* ¶ 36.)

The 23 Emails Lapin refers to as the "Hammer" emails contain links provided by South Dakota-based TinyURL LLC (*Id.* ¶ 27). But Flex was not involved with those emails. (*See id.* ¶ 39 ("…the Hammer [emails], do NOT involve Flex…".))

## B. Lapin is a "digital nomad" who moves from country to country but maintains a legal residence in South Dakota.

Lapin claims to be a "full-time traveling digital nomad, who move[s] from place to place, generally internationally, in 30 day cycles, without a permanent residence in or out of the United States." (*Id.* ¶ 2.) Lapin was "physically present outside of the State of South Dakota at most times material" to the allegations in the Complaint (*id.* ¶ 44), and wrote the Complaint from Bali, Indonesia (*id.* ¶ 39).

Lapin maintains legal residency in South Dakota under a state program "designed to provide residency to perpetual travelers." (*Id.* ¶ 2.) His only alleged connections to South Dakota are the minimum needed to remain qualified for legal residency—a South

Dakota driver license and voter registration, along with a rented mailbox in Sioux Falls which he uses for the address on the license and voter registration. (*Id.* ¶ 2.)

**C.    Flex does not have any meaningful presence in Colorado and the emails at issue in this lawsuit were not targeted at Colorado residents.**

Lapin admits that Flex is domiciled and located in New York. (*See* Compl. ¶¶ 39, 45, 46; *cf.* Declaration of Michael Held ("Held Decl.") ¶ 3.) Lapin alleges that Flex operates websites that list addresses in New York and New Jersey. (Compl. ¶¶ 7, 8.) And he claims that emails Flex sent included "From" email addresses with domain names with publicly available contact information—known as "Whois" data—identifying New York addresses. (*Id.* ¶¶ 14, 15a–15f.)

At one point Flex registered as a foreign business entity in Colorado but it never conducted any business in Colorado. (Held Decl. ¶¶ 4-5.) Flex has never had any offices, property, assets, telephone listings, or bank accounts in Colorado. (*Id.* ¶ 6.) Flex does not have any employees, members, or managers in Colorado, does not recruit employees in Colorado, does not have sales personnel in Colorado, and has never marketed or advertised in Colorado. (*Id.* ¶ 7.)

Flex has never targeted or directed internet-marketing efforts at Colorado residents. (*Id.* ¶ 8.) Instead, all the email marketing Flex is associated with—including the emails at issue here—is national and does not target any particular state. (*Id.*)

**ARGUMENT**

**I.    Motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2)**

Flex moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2). As plaintiff, Lapin carries the burden of establishing this Court's jurisdiction over Flex—and the law of the forum state and constitutional due process limitations govern the analysis. *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th

4

Cir. 2000); *see* Fed. R. Civ. P. 4(k)(1)(A). The Court presumes well-pleaded facts in the complaint are true with two important limitations. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). First, the presumption does not extend to conclusory allegations, implausible claims, speculation, or conjecture. *See id.*; *see also Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Second, a defendant may overcome the presumption with an affidavit contradicting the complaint's jurisdictional allegations. *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998); *see also Wenz*, 55 F.3d at 1505. When the defendant does supply a declaration, the Court must presume the conclusions stated in the declaration are true rather than the complaint's allegations. *Pierce*, 137 F.3d at 1192.

A.    **The Court lacks jurisdiction because Flex did not intentionally target Colorado or otherwise establish minimum contacts with the forum state.**

Lapin does not allege, and the record does not support, general jurisdiction—that is when the defendant's contacts with the forum are so "continuous and systematic" that it is "at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). And the mere fact that Flex registered to do business in the state does not subject it to general jurisdiction. *See Magill v. Ford Motor Co.*, 2016 CO 57, ¶ 22, 379 P.3d 1033, 1039 (applying *Goodyear* and *Daimler AG v. Bauman*, 571 U.S. 117 (2014), to reject general jurisdiction over Ford Motor Co. because concluding "that a corporation is 'at home' simply because it does business in Colorado would be 'unacceptably grasping.'")

Lapin alleges that specific personal jurisdiction over Flex is authorized via Colo. Rev. Stat. § 13-1-124(1). (Compl. ¶¶ 39-40.) But Lapin is silent as to factual jurisdictional allegations specific to Flex. (*Id.* ¶ 40.) Instead, he makes an implausible and conclusory assertion that a paragraph of allegations specific to Defendant NRRM,

LLC also applies to Flex. (*Id.*) On the other hand, Flex's founder and CEO, Michael Held, testified that Flex has no meaningful presence in Colorado and that none of the emails in this case were knowingly targeted at Colorado residents. (Held Decl. ¶¶ 5-9.)

The Tenth Circuit recently analyzed the issue of specific personal jurisdiction in the context of a lawsuit over allegedly unlawful commercial emails in *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). There, the Tenth Circuit held that specific jurisdiction is proper only if (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum State, and (2) the plaintiff's alleged injuries "arise out of or relate to those activities." *Id.*, citing *Burger King Corp.*, 471 U.S. at 472. Here, as in *XMission*, specific personal jurisdiction is improper because Flex did not purposefully direct its activities at Colorado residents.

Lapin does not allege that Flex purposefully directed the email at issue in this lawsuit to Colorado residents. (*See* Compl. ¶¶ 38-41.) This ends the personal jurisdiction analysis. *See XMission*, 955 F.3d 833; *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895 (10th Cir. 2017); *Shrader*, 633 F.3d 1235 (all holding that, at minimum, plaintiff must show defendant "purposefully directed its activities at residents of the forum state").

Even if the Court were inclined to continue the analysis, the result would not change. In *XMission*, the plaintiff alleged receipt of emails in violation of the federal CAN-SPAM Act and sued in Utah, where the plaintiff resided. 955 F.3d at 837-39. The Tenth Circuit affirmed dismissal of a New York-based defendant for lack of personal jurisdiction because the defendant provided a sworn declaration that the company had no general business presence in Utah and that the emails at issue were part of nationwide advertising campaigns not targeted at Utah (or any other state). *Id.* at 846. *XMission* requires a plaintiff (like Lapin) who alleges receipt of mass email in violation of

law to show that the defendant (Flex) *knew* the recipient resided in the forum state (Colorado). Lapin does not allege any of this and, even if he did, the Held Declaration specifically rebuts it and controls this Court's analysis. *See Pierce*, 137 F.3d at 1192.

Since Flex did not purposefully direct its activities toward Colorado residents, Lapin cannot establish Flex's minimum contacts and the Court lacks jurisdiction.

**B.    Even if minimum contacts existed, personal jurisdiction would be unreasonable under the *Old Republic* factors.**

If the Court found minimum contacts, it would then determine "whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Shrader*, 633 F.3d at 1240. The Tenth Circuit uses a five-factor test for this: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Old Republic Ins. Co.*, 877 F.3d at 909. The weaker the defendant's contacts with the forum state, the less the defendant must show to establish that personal jurisdiction would be unreasonable. *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007).

Here, the factors cut against exercising personal jurisdiction with unusual force. First, although the defendant's burden is not dispositive, it is given "special significance" because of its role in preventing the "filing of vexatious claims in a distant forum where the burden of appearing is onerous." *OMI Holdings*, *Inc. v. Royal Ins. Co. of Can.*,149 F.3d 1086,1096. This factor strongly favors a defendant that operates a considerable distance from the forum state and has no offices, employees, or agents in the forum state. *See id.* at 1096. Flex operates in New York and has never had offices,

employees, or agents in Colorado. (Held Decl. at ¶¶ 5-9.) And the evidence and witnesses necessary to Flex's defense are primarily in New York where Flex is based.

The second factor analyzes the forum state's interest in adjudicating the suit and the third factor asks whether the plaintiff would be able to receive convenient and effective relief in an alternative forum. *OMI Holdings*, 149 F.3d at 1096–97. Colorado has no meaningful interest in adjudicating a suit by a non-resident alleging a violation of another state's law. And Lapin, is a self-described "full-time traveling 'digital nomad', who moves from place to place, generally internationally, in 30-day cycles, without a permanent residence in or out of the United States." (Compl. ¶ 2) He cannot plausibly claim that trying the case in New York is any more or less inconvenient than Colorado.

The fourth and fifth factors look to maximize efficiency while advancing the states' collective interest in enforcing substantive law. *See OMI Holdings*, 149 F.3d at 1097. A district court in New York would have the same interest in adjudicating Lapin's claims as any Colorado court would. It would be unreasonable to force Flex to defend this lawsuit in Colorado when New York is a suitable forum.

The Court should dismiss Lapin's complaint against Flex for lack of personal jurisdiction. And in light of the Held Declaration—which rebuts any plausible allegation of purposeful direction by Flex—the dismissal should be without leave to amend because any amendment would be futile. *See Jefferson Cnty. Sch. Dist. v. Moody's Inv. Servs.,* 175 F.3d 848, 859 (10th Cir.1999) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal"); *see also Ketchum v. Cruz,* 961 F.2d 916, 920 (10th Cir.1992).

## II.   Motion to dismiss for failure to state a claim under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When "examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Iqbal*, 129 S. Ct. at 1949).

**C.    Lapin fails to state a claim for relief because South Dakota law does not apply to this multistate dispute.**

The court applies the choice-of-law rules of the state in which the district court sits. *Mem'l Hosp. v. Healthcare Realty Tr., Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007). Colorado courts follow "the most significant relationship to the occurrence and parties test, expressed in the Second Restatement [(Second) of Conflict of Laws], for multistate tort controversies." *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509 (Colo. 2007) (citing Restatement (Second) of Conflict of Laws § 145 (1971)).

Under the Restatement, contacts to be taken into account in determining the "most significant relationship to the occurrence and the parties" include (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *AE, Inc.*, 168 P.3d at 510 (citing Restatement (Second) of Conflict of Laws § 145). "Courts are to evaluate the Section 145 contacts and assign a relative degree of importance to each." *Lawson v. Western Skyways, Inc.*, 2010 WL 2943550, *2 (D. Colo. 2010).

Here, the factors are either neutral or indicate that Colorado or New York law should apply; none of them weigh in favor of applying South Dakota law to this dispute.

1.   **The alleged place of injury is not in South Dakota because Lapin was not located there when he received the Emails.**

With respect to the first factor, place of injury, the Complaint doesn't allege any injuries Lapin suffered while located in South Dakota. The most-significant-relationship test considers the plaintiff's location when injured, and not its state of residence. *See Anderson v. Com. Constr. Servs.*, 531 F.3d 1190, 1195 (10th Cir. 2008). In *Anderson*, a Missouri resident was injured while performing demolition work in Kansas. *Id.* at 1192. The Tenth Circuit held that because the injury occurred in Kansas, Kansas law applied to the dispute under the Restatement's most-significant-relationship test, even though Kansas law barred the plaintiff from proceeding with his claims. *Id.*

Here, Lapin received the Emails while visiting one of the "different countr[ies] every 30 days" he frequents, like Indonesia, where he wrote the Complaint. (*See* Compl. ¶¶ 2, 39) His injury did not occur in South Dakota, so this factor weighs against South Dakota and in favor of New York or Colorado.

2.   **The alleged injury-causing conduct occurred in Colorado or New York, not South Dakota.**

As for the second factor—the place where the conduct causing the injury occurred—a plaintiff's allegation that conduct took place in a particular place is sufficient for this factor to weigh in favor of applying that location's laws. *See Shrader v. Biddinger*, No. 10-CV-01881-REB-MJW, 2012 WL 976032, at *10 (D. Colo. Feb. 17, 2012), *report and recommendation adopted sub nom. Shrader v. Beann*, No. 10-CV-01881-REB-MJW, 2012 WL 976031 (D. Colo. Mar. 21, 2012), *aff'd*, 503 F. App'x 650 (10th Cir. 2012); *see also* Restatement § 145 cmt. e (where an injury occurred in two or more states or the place of injury can't be ascertained or is fortuitous and bears little relation to the occurrence and parties, the place where the defendant's conduct occurred will usually be given particular weight). Lapin effectively alleges that

this is the most important factor here, as he characterizes his claims as not being focused on his "receiving the spam emails," but "rather the tort / cause of action that is being committed is 'Spam emails were sent" to him. (Compl. ¶ 44.) The Emails were sent from New York.

The *pro se* plaintiff in *Shrader* lived in Oklahoma at the time his defamation complaint was filed in Colorado. 2012 WL 976032, at *1. The court recognized that in defamation cases, the plaintiff's domicile usually determines the law to be applied, but that that approach wouldn't work because "here we are dealing with Internet communications involving parties in multiple states." *Id.* at *9. The *Shrader* court found that because the plaintiff alleged that two defendants were Colorado residents publishing alleged defamatory statements from Colorado, "the place where the conduct causing the injury occurred, is Colorado." *Id.* Accordingly, the Court applied Colorado law which required dismissal of the plaintiff's false-light claim because "in Colorado there is no cause of action for false light invasion of privacy." *Id.* at *10.

Similarly, although Lapin alleges his legal residence is in South Dakota, the Complaint specifies that the conduct resulting in his alleged injury took place in Colorado and New York, including allegations that:

- the cause of action "arises out of" CarShield's Colorado conduct (Compl. ¶ 39);
- American Auto sells the advertised vehicle service contracts at issue in all of the emails from its Colorado headquarters (*id.* ¶ 3, 39);
- CarShield's marketing material represents that the vehicle-service contracts it offers will be administered by American Auto in Colorado (*id.* ¶ 4);
- Flex is located and/or domiciled in New York. (*id.* ¶¶ 45, 46);
- Flex's email-marketing websites use New York addresses (*id.* ¶¶ 7, 8); and

- emails Flex sent included "From" email addresses with domain names whose Whois data list New York addresses (*id.* ¶¶ 14, 15a–15f).

Thus, as in *Shrader*, although Lapin is domiciled in South Dakota, because "we are dealing with Internet communications involving parties in multiple states," the applicable law should be of the "place where the conduct causing the injury occurred[,] Colorado." 2012 WL 976032, at *9.

### 3.   The parties' domicile, residence, nationality, place of incorporation and place of business weigh in favor of applying Colorado or New York law.

The third factor—the parties' domicile, residence, nationality, place of incorporation, and place of business—also weighs in favor of Colorado law. Lapin's claim to legal residence in South Dakota is a technicality at best. He is a "digital nomad…without a permanent residence," who was "physically present outside of the State of South Dakota at most time material" to the allegations. (Compl. ¶¶ 2; 44.) The only factual allegations linking him to South Dakota are the rented mailbox in Sioux Falls he uses for legal residency, driver license, and voter registration. (*See id.* ¶ 2.)

In contrast, Lapin alleges that American Auto is headquartered and sells the advertised vehicle-service contracts from Colorado. (*Id.* ¶¶ 3, 39.) NRRM (CarShield) does business with American Auto in Colorado and sells vehicle-service contracts that it claims will be administered in Colorado. (*Id.* ¶¶ 3, 4.) Similarly, Flex is located and domiciled in New York, engages in email marketing with websites that list New York addresses, and sends emails with "From" email addresses with domain names whose Whois records list New York contact information. (*Id.* ¶¶ 7, 8, 14, 15a–15f, 45, 46.)

### 4.   The parties' relationship is centered in Colorado, not South Dakota.

The fourth factor is the place where the parties' relationship is centered. In *Shrader*, this factor weighed in favor of Colorado instead of the plaintiff's home

jurisdiction because, "the primary relationship alleged here centers on the Wave59 website and its bulletin board." 2012 WL 976032, at *10. Similarly, Lapin's Complaint is based entirely on allegations about unlawful commercial emails from New York advertising Colorado-based American Auto's vehicle-service contracts. (*See, e.g.*, Compl. ¶¶ 3, 4, 39.) This fourth factor also weighs in favor of Colorado law.

**D.    Lapin fails to state a claim under Colorado law because the legislature has not created a private right of action under which an email recipient like Lapin has standing to sue commercial emailers.**

Like South Dakota, Colorado enacted a statute regulating falsity and deception in commercial email, the Spam Reduction Act of 2008, C.R.S. § 6-1-702.5. Lapin alleges that his claims "would also be recognized as a tort action in the state of Colorado, as Colorado has enacted similar legislation". (Compl. ¶ 39 (citing C.R.S. § 6-1702.5).)

Although the Colorado and South Dakota commercial-email statutes are substantively similar, they differ with respect to enforcement. The South Dakota statute provides a cause of action for email recipients meeting certain criteria and provides remedies in the form of liquidated per-violation statutory damages and attorneys' fees. S.D. Codified Laws § 37-24-48. In contrast, the Colorado statute only authorizes causes of action by the attorney general and by email service providers. C.R.S. § 6- 1- 702.5(4)(a), (5)(a). Thus, under Colorado law, which should be applied to this dispute under the most-significant-relationship standard, Lapin has no private right of action, and his claims are barred. *See Anderson*, 531 F.3d 1190, 1196 (affirming dismissal of plaintiff's claims because they're barred under law of jurisdiction indicated by most-significant-relationship test). Since Lapin fails to state a claim under Colorado law, the Court should dismiss this case under Rule 12(b)(6).

E.    **Lapin fails to state a claim for relief against Flex because the South Dakota law only applies to parties who advertise in commercial email, and he expressly alleges that Flex did not advertise in any emails.**

The SD Email Law expressly applies only to parties who "advertise in" a commercial email, and not to those who "send" or "initiate" the email. S.D. Codified Laws §§ 37-24-47, 37-24-48. There is no reference in either section to prohibitions against "initiating" commercial email or a private right of action against a non-advertiser involved in "initiating" commercial email.

 "Advertiser" is defined as a "person or entity that advertises through the use of commercial e-mail advertisements," which are defined as emails "initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." S.D. Codified Laws § 37- 24- 41(1), (2). In contrast, "initiate" means "to transmit or cause to be transmitted a commercial e-mail advertisement or assist in the transmission of a commercial e-mail advertisement by providing electronic mail addresses where the advertisement may be sent…." S.D. Codified Laws § 37-24-41(8).

Where the South Dakota legislature "used different words within the same chapter, it obviously intended different meanings." *State v. Marshall*, 495 N.W.2d 87, 88–89 (S.D. 1993) (citing *Border States Paving v. Dept. of Revenue*, 437 N.W.2d 872 (S.D. 1989)). Thus, by referring to "advertise" but not "initiate," the legislature intended for it to only apply to parties whose goods or services are advertised in email, and not to "initiators" involved in transmitting the email. *See Martinmaas v. Engelmann*, 612 N.W.2d 600, 611 (S.D. 2000) ("The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.") Courts may not read language into a statute "that is simply not there." *State v. Buffalo Chip*, 951 N.W.2d 387, 396 n.15 (S.D. 2020) (*citing*

14

*Olson v. Butte Cty. Comm'n*, 925 N.W.2d 463, 466 (S.D. 2019) (rejecting interpretation that would add words "that do not exist" in the statute).

Although no court appears to have evaluated these terms in the SD Email Law, the Northern District of California evaluated an essentially identical issue in interpreting California's identical email statute, California Business & Professions Code, § 17529.5. *See Blanchard v. Fluent, Inc.*, No. 17-CV-04497-MMC, 2017 WL 4224768, *1 (N.D. Cal. Sept. 22, 2017). Lapin agrees that the SD Email Law mirrors the California statute, comparing them as "virtually 'copy and paste'" and "nearly identical." (Compl. ¶¶ 29(B), 32.) One of the defendants in *Blanchard*, Panda Mail, sought dismissal under Rule 12(b)(6) on the grounds that the complaint did not allege that Panda Mail advertised in any of the emails, but merely "sent" the emails in which another defendant had "advertised." *Blanchard*, 2017 WL 4224768, at *2. Applying California's "principles of statutory interpretation," the court found that because the California statute separately defines "initiate" and "advertiser" but prohibits only "advertising" in commercial emails, the proper interpretation was that the legislature "did not intend a sender of commercial email, unless such sender is also an advertiser, to be liable" under the statute. *Id.* at *3.

Because the SD Email Law only applies to those who "advertise" in commercial emails, Flex Marketing cannot be liable as a matter of law for allegedly "initiating" or "sending" emails. Lapin has failed to state a claim for relief against Flex.

## CONCLUSION

The Court should dismiss Lapin's claims against Flex under Rule 12(b)(2) because Flex is not subject to personal jurisdiction here. Alternatively, the Court should dismiss under Rule 12(b)(6) because (i) the SD Email Law does not apply here, (ii) Colorado's email-marketing law does not include a private right of action, and (iii) Flex is not an "advertiser" subject to liability under the SD Email Law.

s/ Derek A. Newman
**Derek A. Newman**
Newman Du Wors LLP
2101 Fourth Ave., Suite 150
Seattle, WA 98121
Telephone: (206) 274.2800
Fax: (206) 274-2801
Email: dn@newmanlaw.com
Attorney for Defendant
Flex Marketing Group LLC

*Craig R. May*
*Charles W. Gibson*
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244.1800
Fax: (303) 244.1879
Email: may@wtotrial.com,
gibson@wtotrial.com
Attorneys for Defendant
Flex Marketing Group, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 15th day of July, 2022, served the foregoing

DEFENDANT FLEX MARKETING GROUP, LLC'S MOTION TO DISMISS UNDER RULE

12(B)(2) AND RULE 12(B)(6) via the method described below:

Joshua Lapin
401 E. 8th St.
STE 214, PMB 7452
Sioux Falls, SD 57103
via Email:  thehebrewhammerjosh@gmail.com

*Pro se* Plaintiff

Jeffrey H. Kass
Lewis Brisbois Bisgaard & Smith
1700 Lincoln Street, Suite 4000
Denver, CO 80203
via the Court's CM/ECF system

Counsel for Defendant
NRRM LLC d/b/a CarShield,
and American Auto Shield, LLC

s/ Erika Cueva
Erika Cueva