

Joshua Lapin, Pro Se Plaintiff

401 E 8th ST
STE 214 PMB 7452
Sioux Falls SD 57103

Email: thehebrewhammerjosh@gmail.com

Facsimile: (605) 305-3464

**UNITED STATES DISTRICT COURT**

**DISTRICT OF COLORADO - DENVER**

| | |
|---|---|
| Joshua Lapin<br><br>Plaintiff,<br><br>vs.<br><br>Flex Marketing Group, LLC<br>American Auto Shield LLC<br>Nrrm LLC dba CarShield<br>John Doe Sender<br><br>Defendants | Case No.: 1:22-cv-01543-CMA-SKC<br><br>**REPLY TO NRRM LLC AND AMERICAN AUTO SOLUTIONS LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |

## INTRODUCTION

Newman Du Wors LLP is at it again. Barely one year ago, the firm removed one of Plaintiff's related cases out of Florida Circuit Court to Southern District of Florida, stating an inadequate Federal Question as the basis of removal, and the Hon. Aileen M. Cannon agreed with Plaintiff and remanded the same. The order is attached as Exhibit A. Hardly one year later, Newman Du Wors-represents Flex Marketing Group, a non-resident defendant, who organized the other defendants to do a last minute, impulse-driven "snap removal" on the basis of diversity...in the absence of the requirements of diversity. Newman Du Wors LLP is 2/2 for botched removals of cases filed by Plaintiff Joshua Lapin, and the instant motion should be viewed through that light.

## ARGUMENT AND RESPONSES

**"Lapin calls himself The Hebrew Hammer...[and] is a Serial Plaintiff"**

Plaintiff clarifies the origins and intention of the name "The Hebrew Hammer." Plaintiff is Jewish, 25 years of age, went to Hebrew School as a child, was Bar-Mitzvah-ed at 13 years of age, and has been to Israel twice, the first time being part of the famous "Birthright program." Plaintiff is proud of his Jewish faith and the good morals instilled by the faith, and loves the Jewish and the Israeli people. In high school, plaintiff joined the wrestling team and wrestled all four years of high school. Being the only Jewish guy on the wrestling team, his gentile-teammates gave him the nickname "The Hebrew Hammer." Plaintiff immediately loved and embraced the name and it stayed with him permanently, even eventually prompting him to create a new email address "thehebrewhammerjosh@gmail.com," of which some spams sent by Flex were sent to in the "related cases," although none which ("advertise") NRRM / AAS, and therefore will not make a great appearance in this particular suit.

However, Plaintiff keeps this nickname out of court motions and pleadings because it would be unprofessional to go by anything other than "Lapin", "Plaintiff", "Mr. Lapin" or "Joshua Lapin.", and it would be outright absurd to be known as "The Hebrew Hammer" in a court of law. Let Plaintiff be very clear, Your Honor, it was Jeffrey H. Kass of Lewis Brisbois Bisgaard & Smith LLP that brought the nickname "The Hebrew Hammer" before this court; Plaintiff did no such

thing.

And it is no wonder he did. Jefferey Kass describes himself as follows on his LinkedIn page:



Jeffrey Kass · 2nd

Intellectual Property & Business Trial Lawyer | Counsel to Entrepreneurs | Author | Thought Leader | Speaker | Authority on Race & Society | Racism Extermination Trainer | Denver, St Louis and Nationwide

Talks about #jewish, #racism, #diversity, #unconsciousbias, and #intellectualproperty

Denver, Colorado, United States · Contact info

The self-described "Authority on Race and Society" has the audacity to accuse the Jewish Plaintiff of calling himself "The Hebrew Hammer." But he doesn't stop there… He accuses "The Hebrew Hammer" of being a "serial plaintiff" within the same breath. The full sentence " "Lapin, who calls himself the "Hebrew Hammer" is a serial plaintiff and is at it again here." " Setting aside that Plaintiff never did, and never would, associate Judaism or "The Hebrew Hammer" with frequent litigation and that only Jeffrey Kass did such a thing, the evidence shows that the "Authority on Race & Society" is an outright hypocrite and violates his own social standards for others. Just four days after writing this now-infamous phrase, Mr. Kass, being wholly aloof to his own hypocrisy, wrote an article entitled, "Who's allowed to use the N-word" [Exhibit B].





## Who's Allowed to Use the N-Word

Is there a double standard on who gets to say it and who doesn't?



Image: Nomad_Soul/Shutterstock

The answer is a resounding *Yes.* T standard on use of the N-word.

182 | 7

In this article, Mr. Kass, who calls himself the "Authority on Race and Society," writes,

"Is there a double standard on who gets to say it and who doesn't? The answer is a resounding Yes. There's a double standard on use of the N-word. So what. Here's why that double standard is something we all just need to live with."

Mr. Kass goes on to quote musical Jay Z, who said "the power of the word falls on the one who uses it." The article concludes, in summary, that African Americans can use the N-word and that "white folks" should refrain from using it. Four days before writing this "article," Mr. Kass wrote

his response to the instant motion, in which he portrayed the Jewish plaintiff in a bad light for calling himself "The Hebrew Hammer" <u>outside of this court</u>, and bringing the same nickname <u>into this court</u>. While "The Hebrew Hammer" is not nearly as controversial, nor is analogous, to the weight of the N-word, to the extent that Mr. Kass genuinely believes Jay Z's words ""the power of the word falls on the one who uses it," then a Jewish plaintiff is more than welcome to refer to himself

as The Hebrew Hammer, and Mr. Kass's writing this article four days after filing his response to the instant motion reveals his blindness to his own hypocrisy.

**"[Lapin is] a serial plaintiff"**

Plaintiff likes to remind courts that he is not here to collect "a single dime that he is not entitled to" – Yours Truly. After discovering the private right of action granted to him by his state of residence, and having been suffering under a string of very unfortunate events at the company he founded, SkyCap Solar, plaintiff realized he had many spam emails which were actionable under the same. To the extent it is moral, legal, and ethical to do so, plaintiff intends to continue enforcing this civil penalty, and takes this work very seriously and has educated himself from "0-100," such that he is competitive with qualified attorneys at law who represent the much-wealthier defendants. Plaintiff does not make the same mistake twice after having learned any particular "lesson the hard way," and this is precisely why his motions and pleadings today are dramatically better than those from this time last year. If plaintiff lacks a case, he doesn't file it. It's just that simple. Plaintiff is unsure what Mr. Kass means by "[plaintiff primarily sues] consumer service providers," plaintiff simply knows that he primary sues those who advertise their products within spams, and those who advertise other company's products in spams (referred to as ("Initiators") in the cause of action). Plaintiff cannot control who sends him spam nor who advertises within those spams...by the very nature of spam email.

**"Lapin filed six motions in [Lapin V Jones] first 60 days...the judge order[ed] Lapin to obtain judicial leave before filing further motions"**

The aforementioned case in the District of Idaho (Lapin V Jones et al),pltfs first Federal spam case ever, deals with the most horrific, racist, sexist, and all-around disgusting pornographic spam

emails he has ever seen; anyone privy to those exhibits would be thrilled that action is being taken, and upon reading Mr. Kass's race-based writings, one would expect he would be rooting for me. Upon modifications of material data being modified shortly after filing, as well as provable and material inaccuracies being made in a sworn declaration, and counsel that refused to communicate with Plaintiff except for hostility and legal threats; plaintiff moved for sanctions as needed to deter future violations, and to mitigate his losses and preserve his opportunity to prevail in the litigation. Of the 11 motions pending in that matter at the time of the ORDER baring future filings without leave, only six belong to plaintiff. In other words, approximately half are plaintiff's motions and approximately half are defendants motions. Jeffrey Kass mischaracterizes this order: It does NOT particularly apply to Plaintiff Joshua Lapin, it applies to all parties, "IT IS FURTHER ORDERED that no further motions will be permitted to be filed in this matter unless the Court grants leave to do so." This full order is attached hereto as Exhibit C.

**Lapin did not comply with Local Rule 7.1 (meet and confer)**

When plaintiff's non-removable case which lacked the requirements of diversity...was removed to this court on the basis of diversity, his immediate knee-jerk move was to file this motion to remand that very instant...which actually lead to him incidentally titling the motion "*Instant* Motion to Remand." Plaintiff has admitted to Defendants' counsel that he was unaware of Local Rule 7.1, and hadn't encountered a comparable local rule elsewhere in his spam cases, but maintained that this case never should have been removed here in the first place, that Newman Du Wors LLP unsuccessfully "pulled this on me" hardly a year ago in a Floridian case [Exhibit A]. As can be seen from the email chain submitted by Mr. Kass, Plaintiff clarified the amount in controversy, was open to stipulating remand [with some well-expressed reservations related to the same], and eventually backed out of the stipulation because valuable ESI was modified not once, but at least TWICE, shortly thereafter (Dkt. 11). The second occurance happened AFTER the filing of Dkt. 13, and will be explained in Plaintiff's forthcoming reply to [Defendant's] response to that same motion. Plaintiff refused to stipulate remand ONLY after all of the following occurred:

A: Plaintiff discovered data had been modified AFTER [Flex Marketing] was placed on notice to preserve the very same.

B: After filing the serious motion for default or alternative severe sanctions for spoilation (Dkt 11),

AND plaintiff brought the same to opposing counsel's attention, the very same thing happened AGAIN, as the court will see in Plaintiff's forthcoming reply to (Dkt. 21).

C: After B, serious questions arise if opposing counsel was "in on" the spoilation, "deliberately ignored" the same, or deliberately failed to implemented and oversee an effective litigation hold.

In related case Lapin V NortonLifeLock (2:22-cv-00759), filed in the District of Arizona, Plaintiff has a pending motion for expedited discovery related to the very same spoilation, focused on determining who participated in it, and what role counsel did (or didn't) have in preventing the occurrence, vis-a-vis implementing a litigation hold to prevent the incident from occuring. Pending the outcome of that discovery (if granted), its possible that some of the attorney's representing Flex Marketing Group specifically will face discipline, or alternatively be named in the first amended complaint(s) affected, pending the outcome of the same. Accordingly, Plaintiff felt it was inappropriate to stipulate remand or *anything* after those latest developments, until more is known.

Further, Plaintiff believes that considering Newman Du Wors LLP's history of frivelously removing this particular plaintiff's cases, in multiple jurisdictions, having JUST obtained the privilege of admission to the District of Colorado on 6/24/22 [Exhibit D], and brought the same bad-practice from another jurisdiction into the District of Colorado as its first move, Plaintiff wanted to bring this issue to Your Honor's attention, so that this pattern could be addressed *sua sponte*, if the court deems it fair and just to do so.

**Jeffrey Kass botches a "meet and confer" after accusing Plaintiff of the same**

Further, Jeffrey Kass emailed plaintiff from his personal gmail account, from his iPhone, on 7/13/21 at 7:08am Mountain Time, regarding an extension to file an extensive pleading. He then filed the that motion less than 8 hours thereafter. [Exhibit G] Yet somehow Mr. Kass had enough time the following day 7/14/21 to publish another article entitled, "Noah's Ark, Racism and the Rainbow" [Exhibit E]






# Noah's Ark, Racism and the Rainbow

We aren't doing enough to eradicate racism and racist systems



which [plaintiff alleges] reflect's Mr. Kass's priorities over timely representation over NRRM, LLC and American Auto Solutions, Inc, and his decision to not afford himself enough time to confer with plaintiff...on a timeline near-parallel to his accusing the pro se plaintiff of a similar failure. This is unintended comedic gold. It is not Plaintiff's fault that Mr. Kass waiting until the "11th hour" to confer, nor does this botched meet and confer effort make Mr. Kass any less hypocritical for accusing the inexperienced, pro-se Plaintiff of the same. While this may seem harsh, Jeffrey Kass must be held to the same standard that he attempts to hold plaintiff to. This is intended to be viewed in conjunction with the "Authority on Race and Society" hypocrisy.

**“[Lapin’s refusal to stipulate] calls into grave doubt the validity of Lapin’s direct representations to the Court and his contention that his pleading was misunderstood.”**

In this jarring admission, Jeffrey Kass assumes his own conclusion by assuming that Lapin’s refusal to stipulate remand means that Plaintiff actually intends to collect a total of $171,000, not $57,000 + reasonable costs. Mr. Kass is incorrect. Please see Plaintiff’s attached “Declaration of Amount In Controversy.”

**“Lapin should not be permitted to hide behind his pro se status to avoid the consequences of his inaction.”**

Plaintiff only wishes for the leniency afforded to his pro-se status by Supreme Court holdings, and any other rulings which are binding upon this court from the 10th circuit, including but not limited to *Haines v. Kerner*, 404 U.S. 520 (1971), *Johnson v. Board of County Comm'rs*, 868 F.Supp. 1226 (D. Colo. 1994), *Duran v. Carris*, 238 F.3d 1268 (10th Cir. 2001), *Elmore v. McCammon* (1986) 640 F. Supp. 905, and other cases to the extent they are applicable. Aside from that, Plaintiff requests no additional handouts whatsoever, and eagerly looks forward to the steep challenge ahead of him in the face of his experienced attorney opposition, learning from his mistakes and continuing this rapid legal growth as he strives to be a valuable, appreciated, and contributing member of our judicial system.

**Defendants’ Notice of Removal Clarifies an Insufficient Basis for Removal**

Plaintiff admits his prayer for relief could have been clearer, but Defendant’s notice of removal demonstrates an attempt to agrgregate non-joint claims [Exhibit F, highlights added, contrasted with relevant parts of original complaint].

## CONCLUSION

Newman Du Wors LLP improperly removed this lawsuit has “pulled the same stunt” on the same plaintiff hardly one year ago. The amount in controversy is $57,000 + reasonable costs as sworn in plaintiff’s declaration submitted herewith, which is consistent with plaintiff’s representations to this court AND to opposing counsel prior to their “doubling down” on an amount in controversy of $171,000. Jeffrey Kass’s *ad hominem* attacks on the Plaintiff’s character are irrelevant to this

claim, and fall flat in lieu of his own. Further, Jefferey Kass attempts to shine plaintiff in a bad light despite "green-lighting" the same in one of his recent articles; additionally he fails to meet and confer on a different filing because he waited until the last minute,while accusing plaintiff of the same, yet still makes time to publish a different article the following day, "Noah's Ark, Racism and the Rainbow" the day after his "eleventh hour" filing, leaving no time to adequately meet and confer and revealing his true priorities, double standards, and *material* hypocrisy, for which he must be shown a mirror, and for which Defendant's NRRM and American Auto Solutions deserve focused counsel with aligned priorities.

**Certificate of Service**

This motion will be served onto Defendants' counsel through CM/ECF, and via emailed copies delivered to (some) opposing counsel as stipulated pursuant to FRCP(5)(B)(2)(F).

/s/ Joshua A. Lapin
Joshua A Lapin
Pro Se Plaintiff 7/20/22

__________________________

Signature