Joshua Lapin, Pro Se Plaintiff

401 E 8th ST
STE 214 PMB 7452
Sioux Falls SD 57103

Email: thehebrewhammerjosh@gmail.com

Facsimile: (605) 305-3464

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO - DENVER

| | |
|---|---|
| Joshua Lapin | Case No.: 1:22-cv-01543-CMA-SKC |
| Plaintiff, | |
| vs. | **REPLY TO FLEX MARKETING GROUP'S RESPONSE TO [PLAINTIFF'S] MOTION FOR DEFAULT JUDGMENT AGAINST FLEX MARKETING GROUP, LLC OR IN THE ALTERNATIVE FOR RULE 37(E) SANCTIONS** |
| NRRM LLC dba CarShield | |
| American Auto Shield LLC | |
| Flex Marketing Group, LLC | |
| John Doe Sender | |
| Defendants | |

## **INTRODUCTION**

"...and then Flex Marketing Group, having considered the many times it has been sued in courts across the United States [prior to Joshua Lapin] for its decade-long email spam marathon, apologized for its wrongdoing, acknowledge its pattern, set it place new policies and practices

1

designed to prevent further violations of applicable law." Unfortunately, that did not happen. Flex attempts to deflect and detract and bash the plaintiff in lieu of adequate defenses to the indefensible; plaintiff responds as follows:

## ARGUMENT AND RESPONSES

**"Plaintiff is a prolific pro se litigant...sues defendants for alleged violations of state spam laws..."**

Plaintiff is upfront and transparent that he sues [alleged] email spammers often, including the companies who 'advertise' within the spams...when the applicable law allows for strict liability. Plaintiff clarifies that he only files suits when he believes he has a valid right of action and a case with merit (such as he received spams which violate the non-preempted portion of applicable state spam law(s). These rights of actions call for the private enforcement of civil penalties which far exceed actual damages. Accordingly, the legislatures purposefully incentives litigation because the need to punish the spammer for its nationwide-spam-campaigns exceeds the nominal-damage incurred per recipient. By enabling recipients this right of action, it shifts the recipients cost-benefits analysis. Plaintiff would not take on the extraordinary exposure and risk herein, but not for the statutory reward. Nominal damages would be unlikely to exceed $35, and therefore a $35 suit would be foolish. But following the legislatures intent, he has been driven to assume this risk in pursuit of statutory liquidated damages, while privately enforcing a civil penalty such that the FTC can focus on crimes much more consequential than email spam.

**"...[He] has filed these suits in at least seven states"**

In order to prevail in these claims, plaintiff must file these matters in a court with personal jurisdiction over the defendants, AND subject matter jurisdiction over the South Dakotan cause of action. This can be very challenging given the constraints of Due Process and the 14th Amendment, as well as the supreme court's "minimum contacts" requirements *International Shoe Co. v. Washington.* In order to prevail, plaintiff must successfully either 1) Drag Defendant(s) to South Dakota or 2) Drag South Dakota law to Defendants' forum. Whether the act of sending [or advertising in] unlawful spam emails into a forum is sufficient for the exercise of personal jurisdiction, is currently being litigated in related case *Lapin V Zeetogroup LLC et al* in South

1  Dakota state court.  According to Derek Newman's cases in the 10th circuit, the answer is "no", that
2  sending email(s) into a forum in inadequate to establish personal *specific* jurisdiction over an out-
3  of-state defendant. *FENN v. MLEADS ENTERPRISES*, INC, 137 P.3d 706, 2006 UT 8 (Utah 2006).
4  This is all-the-more-reason why if we cannot drag the defendants into South Dakota, we must find a
5  court with personal jurisdiction over the defendants', and apply South Dakota law therein; this sets t
6  the stage for this action.  However, this court should know that this is the very reason that plaintiff's
7  south dakota spam lawsuits have landed in "seven states" as M. Newman complains; not simply
8  because Plaintiff desires to paint the dockets of this country.  With full respect to this court: it would
9  be preferable for plaintiff to file these actions in South Dakota state court, and pending the decision
10 in *Zeetogroup*, that may be the new strategy from hereonout.

11
12 **"...After demanding millions of dollars in settlement, [Lapin sued Flex in CO,MD,AZ]"**
   As stated above, Plaintiff began filing against (Flex + Advertiser) before he knew of Flex's
13 existence in the form of (John Doe Sender + Advertiser).  When Flex Marketing Group was finally
14 discovered, Plaintiff composed and sent a demand letter in an amount which was a factor of the
15 number of spams X $1000 statutory liquidated damages for each email in breach, as prescribed by
16 the cause of action.  The "millions" were not a random number, and the suits are&were purposeful.
17
18 **"...Lapin's [tactics] include filing a constant barrage of motions [from the start]…in a case [filed January] in Lapin filed six motions in just the first 60 days, leading the court to sua sponte order the parties to obtain leave of court before filing additional motions."**
19 The aforementioned case in the District of Idaho (*Lapin V Jones et al*),pltfs first Federal spam case
20 ever, deals with the most horrific, racist, sexist, and all-around disgusting pornographic spam
21 emails he has ever seen; anyone privy to those exhibits would be thrilled that action is being taken.
22 Upon modifications of *material* data being modified shortly after filing, as well as provable and
23 material inaccuracies being made in a sworn declaration, and counsel that refused to communicate
24 with Plaintiff except for hostility and legal threats; plaintiff moved for sanctions as needed to deter
25 future violations, and to mitigate his losses and preserve his opportunity to prevail in the litigation.
26 Of the 11 motions pending in that matter at the time of the ORDER baring future filings without
27 leave, only six belong to plaintiff.  In other words, approximately half are plaintiff's motions and
28

approximately half are defendants motions. This full order is attached hereto as Exhibit A so that Your Honor can independently review the Hon. Candy Dale's ORDER.  Finally on this matter, those motions in Lapin V Jones still have not been ruled on, and accordingly no conclusions can be drawn.

**"[Lapin]...appears calculated to force Flex to incur attorneys' fees."**

Flex Marketing Group, having been sued multiple times in California and even as far as Utah for precisely the same over a 10 year period, has the audacity of accusing this Plaintiff of forcing Flex to incur attorneys' fees.  The dockets will show that Flex's own repeat-offenses have caused Flex to incur attorney's fees.  But why change their ways when they can accuse Plaintiff of forcing them to defend against their allegations arising out of their latest spam factory?  Perhaps accountability is an old-fashioned value, and Flex would be in the moral&legal right to continue violating the nation's anti-spam laws for yet-another decade to come.  Perhaps all the past-and-current plaintiff's, including Lapin as he types this reply, should apologize to Flex for disrupting their peaceful, unlawful multi-state spam enterprise.  In Exhibits B-E, Your Honor will see previous state/federal complaints filed against Flex and their partners for more-of-the-same, spanning a decade.

**"Lapin not entitled to 37(e) because he preserved those records himself...cannot demonstrate any prejudice" AND "Nor does [Lapin] provide any basis upon which such information 'cannot be restored or replaced through additional discovery' as is required."**

Plaintiff did not, nor could not, preserve all relevant domain registration data by preserving only what is publicly available through whois, and he placed Flex Marketing Group on NOTICE to preserve the same [Exhibit F].  This WHOIS is nothing more than a reflection of what the domain owner has chosen to make available to the public.  The 'registrant name' field as it appear**ed** in the WHOIS data on April 20th 2022, for many of these domains, showed as "REDACTED FOR PRIVACY." or "Lincoln Smith."  For those same domains, it appeared post-modification as "Network Admin."  The 'redacted for privacy' is outright untraceable and 'Lincoln Smith' is a fictitious name associated with the non-existent 'Lincoln Log Networks LLC'.  This is very material to Plaintiff's claim that these domains were registered as to be untraceable to the

sender.  We do not know, nor will we [necessarily] ever be able to know, what was behind the "redacted for privacy" since it has been replaced with the generic label "domain admin."  Such data likely implicated one-or-more individuals as having ownership or control of the domains, and accordingly would be additional defendants named in the first amended complaint; this is hardly speculative and directly relates to the true entities/individuals who had relevant roles in this multi-state spam operation.  Important and material domain registration data cannot reliably be reproduced through historic WHOIS data or [necessarily through] other discovery source. A non-exhaustive example of this:  one of the domains, nationalshoppersurvey.com, has a historic WHOIS on 7-05-2018, which INCREDIBLY contained the frequently-seen-throughout-these-domains fictitious registrant name and fictitious registrant organizations Lincoln Smith / Lincoln Log Networks LLC, but also INCREDIBLY contained the email address of Flex Marketing Group's CEO Michael Held. [Exhibit H]

This was an unbelievable and material discovery made by Plaintiff AFTER the instant motion was filed, and directly implicates its CEO personally, and I can assure this court that these new findings will make a tremendous appearance in the first amended complaint.  However, this data was only available through one WHOIS-history-source: whoxy.com.

However, another historic whois source, DomainTools LLC, only contains preservations for that same domain on 06-02-2018 and 09-15-2018, "skipping over" the relevant times when this discovery was made.  In lieu of the Michael-Held-incriminating information, DomainTools instead shows a sea of "REDACTED FOR PRIVACY" as well as an email address for the domains newly-assigned privacy service: info@domain-contact.org.  The point being: any/all historic-whois-data providers can only "screenshot and archive" the domain data every so often, and material information can-and-has been missed.  Combine this with Plaintiff's exhibits from the instant motion showing recent and material modifications to this whois data aka domain registration data, and the elimination of data which we now have reason to believe directly implicat[ed] Michael Held, and suddenly it's no surprise whatsoever why Defendant has such strong motivation to scramble this data.  The harm to Plaintiff and plaintiff's case against Flex Marketing Group (and Flex's CEO personally) is obvious; defendant has shown it cannot be trusted with this domain

1  information and it must be immediately taken immediately before they can manage to eliminate
2  more traces and trails related to the same.
3  **THE WHOIS DATA WAS MODIFIED AGAIN, AFTER THIS MOTION WAS FILED**
4  Plaintiff was amazed, angry, and even further disappointed to see that the whois data was modified
5  in some of these domains, yet again, even after this motion was filed.  In Exhibit I, please see the
6  WHOIS data for some of the domains.  Highlighted in yellow, the court will see how this data
7  appeared as of the time when the instant motion was filed, and highlighted in red, the court will see
8  how this data appeared shortly thereafter.  At this point, serious and plausible questions arise as to
9  whether Flex Marketing Group's counsel implemented any type of litigation hold whatsoever, and
10 what steps they took to preserve the data which they knew was material to Plaintiff's case.  Even
11 more disturbingly, it is unclear if Flex's counsel participated, intentionally or willfully-negligently,
12 in this loss of data.  Plaintiff no longer feels that he is communicating with "attorney at law" Derek
13 Newman, rather that he is communicating with "pro-se defendant Derek Newman."  Until Plaintiff
14 can figure out the  who/what/when/where/why, of this modification, plaintiff remains highly, highly
15 skeptical of opposing counsel, which is preventing or hindering his ability to cooperate with them in
16 this matter.
17 **SINCE THIS MOTION, IT HAS BEEN CONFIRMED THAT TWO DOMAINS WERE**
18 **LISTED FOR SALE, AND ONE HAS ALREADY BEEN SOLD**
19 Plaintiff knew that one of the domains had been listed for sale on GoDaddy or Afternic (which is
20 owned by GoDaddy) [Exhibit J] On July 4th, plaintiff sent Godaddy a preservation letter to attempt
21 to learn
22 who/what/when/where/how this highly material domain was being sold.  To plaintiff's horror, he
23 discovered on July 14th that the domain was no longer for sale, and *apparently* had been sold
24 [Exhibit K], as it is no longer listed on Godaddy and is listed as "taken," AND it no longer has any
25 discernible whois data as of today [Exhibit L].  Plaintiff feels as if he has been robbed of his case
26 for all UCE's, in this case and in the related cases, which purport updates@buzzbarrelreview.com in
27 the 'from' line of the UCE's, including UCE's in related cases which do not advertise
28

Carshield / American Auto Shield.  It is unclear if the old registrar, Moniker Online Services LLC, will even hold onto domain registration data which is no longer owned by Flex and Held.  Buzzbarrelreview.com was SOLD. AFTER. BEING. ON. NOTICE. TO. PRESERVE. ITS. DATA.  Time is not  plaintiff's friend, and he must attempt to save whatever can be saved.

Plaintiff must also figure out every aspect of who/what/when/ listed this domain for sale at Godaddy, and the related details.

Another domain, dealzingo.com, which also directly implicates Michael Held prior to the domain whois data modification of which I complained in this instant motion, had been listed for sale at Sedo.com LLC [Exhibit L], and as of today, is still for sale at Sedo.com LLC.  Plaintiff sent Sedo a preservation letter on June 28th. Plaintiff similarly needs to uncover who/what/when/where/how this domain was listed FOR. SALE. AFTER. BEING. ON. NOTICE. TO. PRESERVE. ITS. DATA.

Just as importantly, serious questions arise surrounding who advised Michael Held and Flex Marketing Group to list these domains for sale post-preservation-letter?  Such co-conspirators, even if they hold eloquent titles such as "esquire", must be legally held accountable for the same.

## CONCLUSION

Flex Marketing Group's behavior should be met with a default judgment.  Alternatively, they should be severely sanctioned for their misconduct.  Flex Marketing Group's *ad hominem* attacks against the plaintiff's character hold no water, enrich no soil, and bear no fruit.  Further, their defenses are wholly inadequate and speak volumes as to the mindset of a party with little respect for its duty to preserve evidence, and should be dealt with accordingly.

### Certificate of Service

This motion will be served onto Defendants' counsel through CM/ECF.

/s/ Joshua A. Lapin
Joshua A Lapin
Pro Se Plaintiff 7/21/22
_____
  Signature