

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

# Document Scanning Lead Sheet

Mar-16-2016  9:17 am

Case Number: CGC-16-550974

Filing Date: Mar-16-2016 9:09

Filed by:  ROSSALY DELAVEGA

Image: 05315321

COMPLAINT

DANIEL BARRETT ET AL VS. FLEX MARKETING GROUP LLC A NEW YORK

001C05315321

**Instructions:**
Please place this sheet on top of the document to be scanned.

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

FLEX MARKETING GROUP LLC, a New York limited liability
company, et al (Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DANIEL BARRETT, an individual, et al
(Additional Parties Attachment form is attached)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

**CASE NUMBER:**
*(Número):* **CGC 16-550974**

Superior Court of California, County of San Francisco
400 McAllister Street, San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Daniel Balsam, Law Offices of D. Balsam, 2601C Blanding Ave. #271, Alameda, CA 94501, 415-869-2873

DATE: March 16, 2016          **CLERK OF THE COURT**          Clerk, by _____, Deputy
*(Fecha)* **MAR 16 2016**          *(Secretario)* DE LA VEGA-NAVARRO, Rossaly          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Barrett v. Flex Marketing Group LLC et al | |

## INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

DANIEL BARRETT, an individual;

CHRISTINA BOWMAN-JONES, an individual;

HEATHER BYRNES, an individual;

MICHAEL FERNANDEZ, an individual;

ERIC HELLMAN, an individual;

NICOLE MORTON, an individual;

JAMES JOBE, an individual;

DEBRA KOTTONG, an individual; and

VANESSA POWERS, an individual;

    Plaintiffs

Page   2   of   3

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Barrett v. Flex Marketing Group LLC et al | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

FLEX MARKETING GROUP, LLC, a New York limited liability company;

BRICK RUN MEDIA LLC, a Delaware limited liability company;

MICHAEL HELD, an individual;

2014 CC MATCHER, a business entity of unknown organization;

ADSSTARS INC., a business entity of unknown organization;

PHUNNY PHOTOSHOP, a business entity of unknown organization; and

DOES 1-500;

    Defendants.

Page 3 of 3

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

1  Jacob Harker (State Bar No. 261262)
2  LAW OFFICES OF JACOB HARKER
   582 Market Street, Suite 1007
3  San Francisco, CA 94104
   Tel: (415) 624-7602
4  Fax: (415) 684-7757
5  Email: jacob@harkercounsel.com
6
   Daniel L. Balsam (State Bar No. 260423)
7  THE LAW OFFICES OF DANIEL BALSAM
   2601C Blanding Avenue #271
8  Alameda, CA 94501
9  Tel: (415) 869-2873
   Fax: (415) 869-2873
10 Email: legal@danbalsam.com
11
12 Attorneys for Plaintiffs
13

14            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15         **COUNTY OF SAN FRANCISCO (UNLIMITED JURISDICTION)**

16

| | |
|---|---|
| 17  DANIEL BARRETT, an individual; | ) Case No.: **CGC 16-550974** |
| CHRISTINA BOWMAN-JONES, an | ) |
| 18  individual; | ) |
| HEATHER BYRNES, an individual; | ) **COMPLAINT FOR DAMAGES** |
| 19  MICHAEL FERNANDEZ, an individual; | ) |
| ERIC HELLMAN, an individual; | ) **1. VIOLATIONS OF CALIFORNIA** |
| 20  NICOLE MORTON, an individual; | ) **RESTRICTIONS ON UNSOLICITED** |
| 21  JAMES JOBE, an individual; | ) **COMMERCIAL E-MAIL (Cal. Bus. &** |
| DEBRA KOTTONG, an individual; and | ) **Prof. Code § 17529.5)** |
| 22  VANESSA POWERS, an individual; | ) |
| 23 | ) |
| Plaintiffs, | ) |
| 24 | ) |
| v. | ) |
| 25 | ) |
| FLEX MARKETING GROUP, LLC, a New | ) |
| 26  York limited liability company | ) |
| BRICK RUN MEDIA LLC, a Delaware | ) |
| 27  limited liability company; | ) |
| MICHAEL HELD, an individual; | ) |
| 28  2014 CC MATCHER, a business entity of | ) |
| 29  unknown organization; | ) |
| ADSSTARS INC., a business entity of | ) |
| 30  unknown organization; | ) |
| 31  unknown organization; | ) |

**1**

PHUNNY PHOTOSHOP, a business entity of )
unknown organization; and )
DOES 1-500; )
                                       )
_____Defendants._____)

COME NOW PLAINTIFFS DANIEL BARRETT *et al* and file this Complaint for one cause of action against Defendants FLEX MARKETING GROUP, LLC *et al* and allege as follows:

## I. INTRODUCTION AND SUMMARY OF THE COMPLAINT

1.      Plaintiffs DANIEL BARRETT *et al* bring this Action against professional spammers FLEX MARKETING GROUP, LLC ("FLEX"), BRICK RUN MEDIA LLC ("BRICK RUN"), and the individual behind them, MICHAEL HELD (collectively "HELD"), and their advertisers and third party advertising networks and affiliates (aka "publishers"), for advertising in and sending at least 722 unlawful unsolicited commercial emails ("spams") to Plaintiffs. A representative sample spam *(Figure 1)* appears on the next page.

2.      No Plaintiff gave direct consent to receive commercial email advertisements from any of the advertisers – HELD's clients – or had a preexisting or current business relationship with any of the advertisers in the spams at issue.

3.      The spams all materially violated California Business & Professions Code § 17529.5 ("Section 17529.5") due to: a) third parties' domain names without permission; b) materially false and deceptive information contained in or accompanying the email headers (i.e. From Name, Sender Email Address, and Subject Line), and/or c) Subject Lines misleading relative to the contents of the emails.

4.      The various advertisers hired HELD to advertise for them (or hired other networks who in turn hired HELD), and HELD then either: a) sent the spams itself, or b) subcontracted to other third party advertising networks and/or affiliates to send the spams. The advertisers, HELD, the networks, and the affiliates are all strictly liable for the spams.

5.      Spam recipients are not required to allege or prove reliance or actual damages to have standing. *See* Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Nevertheless, Plaintiffs did suffer damages by receiving the spams. *See, e.g.,* Bus. & Prof. Code § 17529(d), (e), (g), (h). However, Plaintiffs elect to recover statutory damages only and forego recovery of any actual damages. *See* Bus. & Prof. Code § 17529.5(b)(1)(B).

Print
https://us-mg5.mail.yahoo.com/neo/launch?.rand=98ob5l4rd9lnh#9178355370

**Subject:** Perfect Credit Card Just For You

**From:** Daily Alert (info@withoutcreditscoremoneyabc.com)

**To:** nikidanielle@yahoo.com;

**Date:** Friday, September 18, 2015 10:00 PM

Credit Card Match

Regain your purchasing power with a credit card!

Here is your chance to be Approved

Apply Today!

Click here to unsubscribe.

or Write to:
AdsStars, Inc.
40 East Main Street #768
Newark, DE 19711

*Figure 1*

6.     This Court should award liquidated damages of $1,000 per email as provided by Section 17529.5(b)(1)(B)(ii), and not consider any reduction in damages, because HELD, its marketing agents, and the advertised entities all failed to implement reasonably effective systems designed to prevent unlawful spamming.  The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

7.     This Court should award Plaintiffs their attorneys' fees pursuant to Section 17529.5(b)(1)(C).  *See also* Code of Civil Procedure § 1021.5, providing for attorneys fees when private parties bear the costs of litigation that confers a benefit on a large class of persons; here, by reducing the amount of false and deceptive spam received by California residents.

## II. PARTIES

### A. Plaintiffs

8.     DANIEL BARRETT ("BARRETT") was domiciled in and a citizen of the State of California, when he received the HELD spams at issue.  The spams at issue were sent to BARRETT's email address *yumfy01@yahoo.com* that he ordinarily accesses from California.

9.      CHRISTINA BOWMAN-JONES ("BOWMAN-JONES") was domiciled in and a citizen of the State of California, when she received the HELD spams at issue.  The spams at issue were sent to BOWMAN-JONES' email address *liopec@yahoo.com* that she ordinarily accesses from California.

10.     HEATHER BYRNES ("BYRNES") was domiciled in and a citizen of the State of California, when she received the HELD spams at issue.  The spams at issue were sent to BYRNES' email address *heather_33b@yahoo.com* that she ordinarily accesses from California.

11.     MICHAEL FERNANDEZ ("FERNANDEZ") was domiciled in and a citizen of the State of California, when he received the HELD spams at issue.  The spams at issue were sent to FERNANDEZ's email address *mxfern@hotmail.com* that he ordinarily accesses from California.

12.     ERIC HELLMAN ("HELLMAN") was domiciled in and a citizen of the State of California, when he received the HELD spams at issue.  The spams at issue were sent to HELLMAN's email address *echellman@yahoo.com* that he ordinarily accesses from California.

13.     JAMES JOBE ("JOBE") was domiciled in and a citizen of the State of California, when he received the HELD spams at issue.  The spams at issue were sent to JOBE's email address *jamesjobe14@yahoo.com* that he ordinarily accesses from California.

14.     DEBRA KOTTONG ("KOTTONG") was domiciled in and a citizen of the State of California, when she received the HELD spams at issue.  The spams at issue were sent to KOTTONG's email address *fadedjeens@yahoo.com* that she ordinarily accesses from California.

15.     NICOLE MORTON was domiciled in and a citizen of the State of California, when she received the HELD spams at issue.  The spams at issue were sent to MORTON's email address *nikidanielle@yahoo.com* that she ordinarily accesses from California.

16.     VANESSA POWERS ("POWERS") was domiciled in and a citizen of the State of California, when she received the HELD spams at issue.  The spams at issue were sent to POWERS' email address *vsp0930@yahoo.com* that she ordinarily accesses from California.

17.     Plaintiffs' joinder in this Action is proper pursuant to Code of Civil Procedure § 378 because Plaintiffs seek relief based on the same series of transactions or occurrences: all received similar spams in the same general time period for HELD's advertisers, and all of those spams were sent by HELD or its marketing agents.  The same questions of law (e.g., violations of Section 17529.5, strict liability) and fact (e.g., direct consent, practices and procedures to prevent advertising in unlawful spam) will arise in this Action.  The fact that each Plaintiff does not sue

**4**

1  for *exactly* the same spams does not bar joinder: "It is not necessary that each plaintiff be

2  interested as to every cause of action or as to all relief prayed for.  Judgment may be given for

3  one or more of the plaintiffs according to their respective right to relief."  Code Civ. Proc.

4  § 378(b).

5  **B.  Defendants**

6  18.    Plaintiffs are informed and believe and thereon allege that Defendant FLEX

7  MARKETING GROUP, LLC ("FLEX") is now, and was at all relevant times, a New York

8  limited liability company doing business as *adgtracker.com,* and with a primary place of

9  business in New York, New York.  Plaintiffs are informed and believe and thereon allege that

10  FLEX sent, or conspired with others to send, all of the spams at issue.

11  19.    Plaintiffs are informed and believe and thereon allege that Defendant BRICK RUN

12  MEDIA LLC ("BRICK RUN") is now, and was at all relevant times, a Delaware limited liability

13  company with a primary place of business in New York, New York.  Plaintiffs are informed and

14  believe and thereon allege that BRICK RUN sent, or conspired with others to send, some of the

15  spams at issue.

16  20.    Plaintiffs are informed and believe and thereon allege that Defendant MICHAEL HELD

17  is now, and was at all relevant times, an individual residing in New York, New York and the

18  principal behind both FLEX and BRICK RUN.  Plaintiffs are informed and believe and thereon

19  allege that FLEX and BRICK RUN shared physical assets, addresses, finances, and intellectual

20  property such that they failed to follow proper corporate formalities, and each is an alter ego of

21  the other.  Plaintiffs further allege that FLEX and BRICK RUN are undercapitalized.

22  Additionally, Plaintiffs are informed and believe and thereon allege that MICHAEL HELD was

23  personally involved with the unlawful actions at issue in this lawsuit. Plaintiffs refer to

24  Defendants FLEX, BRICK RUN, and MICHAEL HELD collectively as "HELD."

25  21.    Plaintiffs are informed and believe and thereon allege that Defendant 2014 CC

26  MATCHER ("CCM") is now, and was at all relevant times, a business entity of unknown

27  organization with a primary place of business in San Francisco, California.  Plaintiffs are

28  informed and believe and thereon allege that no such entity is registered with the California

29  Secretary of State.  Plaintiffs are informed and believe and thereon allege that CCM sent, or

30  conspired with others to send, some of the spams at issue, in a quantity to be determined by

31  proof.

1   22.   Plaintiffs are informed and believe and thereon allege that Defendant ADSSTARS INC.
2   ("ADSSTARS") is a business entity of unknown organization with a primary place of business in
3   Newark, Delaware.  Plaintiffs are informed and believe and thereon allege that no such entity is
4   registered with the Delaware Department of State.  Plaintiffs are informed and believe and
5   thereon allege that ADSSTARS sent, or conspired with others to send, some of the spams at
6   issue, in a quantity to be determined by proof.

7   23.   Plaintiffs are informed and believe and thereon allege that Defendant PHUNNY
8   PHOTOSHOP ("PHUNNY") is a business entity of unknown organization with a primary place
9   of business in Riverside, California.  Plaintiffs are informed and believe and thereon allege that
10  no such entity is registered with the California Secretary of State.  Plaintiffs are informed and
11  believe and thereon allege that PHUNNY sent, or conspired with others to send, some of the
12  spams at issue, in a quantity to be determined by proof.

13  24.   Plaintiffs do not know the true names or legal capacities of the Defendants designated
14  herein as DOES 1 through 500, inclusive, and therefore sue said Defendants under the fictitious
15  name of "DOE."  Plaintiffs are informed and believe and thereon allege that each of the
16  Defendants designated herein as a DOE is legally responsible in some manner for the matters
17  alleged in this complaint, and is legally responsible in some manner for causing the injuries and
18  damages of which Plaintiffs complain.  Plaintiffs are informed and believe and thereon allege
19  that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to
20  the matters alleged within this complaint, acting in conjunction with the named Defendants,
21  whether as a director, officer, employee, agent, affiliate, customer, participant, or co-conspirator.
22  When the identities of DOE Defendants 1-500 are discovered, or otherwise made available,
23  Plaintiffs will seek to amend this Complaint to allege their identity and involvement with
24  particularity.

25  25.   Defendants' joinder in this Action is proper pursuant to Code of Civil Procedure § 379
26  because Plaintiffs seek relief jointly and severally from Defendants arising form the same series
27  of transactions and occurrences, and because common questions of law and fact as to Defendants
28  will arise in the Action.  The fact that all Defendants may not be implicated in all spams does not
29  bar joinder: "It is not necessary that each defendant be interested as to every cause of action or as
30  to all relief prayed for.  Judgment may be given against one or more defendants according to
31  their respective liabilities."  Code Civ. Proc. § 379.

## III.  JURISDICTION AND VENUE

**A.  Jurisdiction is Proper in a California Superior Court**

26.     This California Superior Court has jurisdiction over the Action because all Plaintiffs and at least two Defendants (CCM and PHUNNY) are located in California, and the amount in controversy is more than $25,000.

**B.  Venue is Proper in San Francisco County**

27.     Venue is proper in San Francisco County (or indeed, *any* county in California of Plaintiffs' choosing) because FLEX is a foreign company that has not designated the location and address of a principal office in California or registered to do business in California with the California Secretary of State. *See Easton v. Superior Court of San Diego (Schneider Bros. Inc.)*, 12 Cal. App. 3d 243, 246 (4th Dist. 1970).  Moreover, Defendant CCM is located in San Francisco.  *See* Code Civ. Proc. § 395(a).

## IV.  OVER 700 UNLAWFUL SPAMS

28.     Plaintiffs allege that Defendants engaged in tortious conduct: "wrongful act[s] other than a breach of contract for which relief may be obtained in the form of damages or an injunction." *See* Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed Nov. 5, 2013).

29.     California's False Advertising Law, Business & Professions Code § 17500

> prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." . . . . [T]he UCL and the false advertising law prohibit deceptive advertising even if it is not actually false.

*Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted).

**A.  The Emails at Issue are "Spams"; Recipients and Counts**

30.     The emails at issue are "commercial email advertisements"[1] because they were initiated for the purpose of advertising and promoting Defendants' products and services.

---

[1] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising []."  Bus. & Prof. Code § 17529.1(c).

31.     The emails are "unsolicited commercial email advertisements"[2] because no Plaintiff gave "direct consent"[3] to, or had a "preexisting or current business relationship"[4] with, any of the advertisers in the spams (FLEX's clients).

32.     Plaintiffs did not consent or acquiesce to receive the spams at issue.  Plaintiffs did not waive or release any rights or claims related to the spams at issue.

33.     Defendants advertised in, sent, and/or conspired to send at least 722 unlawful spams that Plaintiffs received at their "California email addresses"[5] within one year prior to the filing of this Action, as shown below:

| PLAINTIFF | SPAMS RECEIVED | PLAINTIFF | SPAMS RECEIVED |
|---|---|---|---|
| BARRETT | 8 | HELLMAN | 25 |
| BOWMAN-JONES | 18 | MORTON | 56 |
| BYRNES | 43 | KOTTONG | 235 |
| FERNANDEZ | 8 | POWERS | 67 |
| JOBE | 262 | **TOTAL** | **722** |

34.     The spams are all unlawful because the spams have third parties' domain names without permission; materially falsified, misrepresented, and/or forged information contained in or accompanying the email headers, and/or Subject Lines that are misleading as to the contents or subject matter of the emails, as described in more detail below.

---

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, [] with the advertiser []." Bus. & Prof. Code § 17529.1(o).

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser* . . . []." Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "'Preexisting or current business relationship,' [] means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, [] regarding products or services offered by the advertiser. []" Bus. & Prof. Code § 17529.1(*l*).

[5] "'California e-mail address' means 1) [] furnished by an [ESP] that sends bills for [] maintaining that e-mail address to [an] address in this state; 2) [] ordinarily accessed from a computer [] in this state; 3) [] furnished to a resident of this state." Bus. & Prof. Code § 17529.1(b).

**B. Spams Containing Third Parties' Domain Names Without Their Permission Violate Business & Professions Code § 17529.5(a)(1)**

35.     Section 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.

36.     Most of the Plaintiffs use Yahoo! as their email service providers.  Yahoo! provides a function whereby an email recipient can view the full headers of an email, including the sending domain name, without opening the email.

37.     Some of the spams at issue contain a third party's domain name without permission of the third party, and therefore violated Section 17529.5(a)(1).  For example:

- HELLMAN received a spam showing *@securedmi.com* in the Sender Email Address.  Plaintiffs are informed and believe and thereon allege that eWayDirect Inc., which owns the domain name *securedmi.com*, prohibits spamming using its services and did not give permission for its domain name to appear in these spams.

38.     Plaintiffs are informed and believe and thereon allege that FLEX and/or its marketing agents caused the spams to show a third party's domain names in the From Lines so that recipients would not be able to identify them as the sender.

**C. Spams With Generic or False From Names Misrepresent *Who* is Advertising in the Spams and Violate Business & Professions Code § 17529.5(a)(2)**

39.     Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

40.     The From Name field is part of email headers.  The From Name does *not* include the Sender Email Address.  So, for example, if an email's From Line says: "John Doe <johndoe@yahoo.com>", the From Name is *just* "John Doe."

41.     The From Name in an email's headers is, not surprisingly, supposed to identify who the email is *from*; it is not supposed to be an advertising message.  Because computers must use standard protocols in order to communicate, the Internet Engineering Task Force created a collection of "Requests for Comment" ("RFCs") that define the rules that enable email to work.  According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es) of the person(s) or system(s) responsible for the writing of the message. . . . In all cases, the "From:" field SHOULD NOT contain any mailbox that does not belong to the author(s) of the message.

42.     Plaintiffs do not insist on any *particular* label (e.g., "Flex Marketing Group, LLC," "Flex," "adgtracker.com," etc.) in the From Name field.  Rather, Plaintiffs contend that the text, whatever it is, cannot misrepresent *who* the emails are from.

43.     The From Name is important to an email user, because in almost all email programs, the inbox view only displays a list of emails, showing the From Name, Subject Line, and Send Date.  Therefore, even *if* the body of the email identifies the advertiser, the recipient will not know that until s/he has already clicked to open the email.

44.     Indeed, empirical evidence has demonstrated that the From Name is the *most* important factor email recipients use to determine whether or not an email is spam.  *See* eMarketer, E-Mail Open Rates Hinge on 'Subject' Line, *available at*

| Select Criteria Used by US Internet Users to Decide Whether to Click on an E-Mail "Report Spam" or "Junk" Button without Opening the Actual Message, December 2006 (% of respondents) | |
| --- | --- |
| "From" line | 73% |
| "Subject" line | 69% |

Note: n=2,252 AOL, MSN/Hotmail, Yahoo!, Lycos, Excite, Gmail, Netscape or Compuserve users
Source: Email Sender and Provider Coalition (ESPC) and Ipsos, March 2007
082363                                                         www.eMarketer.com

http://www.emarketer.com/Article/E-Mail-Open-Rates-Hinge-on-Subject-Line/1005550 (Oct. 31, 2007).  Thus, a From Name that misrepresents who a spam is from is *not* a mere technical error; rather, it is a material misrepresentation of the most important part of the email header.

45.     Although Plaintiffs do *not* sue under the federal CAN-SPAM Act, Plaintiffs note that the Federal Trade Commission has also identified the From Name as the first item in misleading header information in its guide to CAN-SPAM compliance when it stated

> 1.      Don't use false or misleading header information.  Your "*From*," "To," "Reply-To," and routing information – including the originating domain name and email address – *must be accurate and identify the person or business who initiated the message.*

Federal Trade Commission, CAN-SPAM ACT: A COMPLIANCE GUIDE FOR BUSINESS, *available at* http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business (emphasis added).

46.     In *Balsam v. Trancos Inc.*, the unlawful spams were sent from generic From Names that did not *identify* anyone.  The trial court ruled, and the court of appeal affirmed in all respects, that generic From Names violate the statute because they misrepresent *who* the emails are from:

> … The seven [ ] emails do not truly reveal who sent the email . . . . The [ ] "senders" identified in the headers of the [ ] seven emails do not exist or are otherwise misrepresented, namely Paid Survey, Your Business, Christian Dating,

**10**

**COMPLAINT**

Your Promotion, Bank Wire Transfer Available, Dating Generic, and Join Elite. . . . . Thus the sender information ("from") is misrepresented.

203 Cal. App. 4th 1083, 1088, 1090-91, 1093 (1st Dist. 2012), *petition for review denied*, 2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiorari denied*, 2012 U.S. LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied*, 2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013). More specifically, *Balsam* confirmed that generic From Names that "do not exist or are otherwise misrepresented when they do not represent any real company and cannot be readily traced back to the true owner/sender" violate the statute. *Id.* at 1093. The Court affirmed the award of $1,000 liquidated damages for the seven emails with misrepresented information in the From Name field, even though most of the spams identified the advertiser in the body. *Id.* at 1091, 1093. Therefore, truthful information in the body of a spam does not cure misrepresented information contained in or accompanying the headers.

47.     Almost all of the spams that Plaintiffs received advertising Defendant's websites show generic text in the From Name field that misrepresents *who* the spams are from, e.g. "Customer Care," "Warning," "Make Money Online," and "Love Your Body Again." These generic From Names could just as easily refer to Defendants' competitors.

48.     These From Names, like those in *Balsam*, misrepresent *who* was advertising in the spams, and therefore violate Section 17529.5(a)(2).

49.     Plaintiffs are informed and believe and thereon allege that Defendants knowingly choose to advertise using generic From Names precisely so the recipients will *not* know who the emails were really from when viewing the spams in the inbox view. This forces recipients to open the emails to see if the emails might actually be from someone with whom the recipient has had dealings, or if the emails are in fact, as is the case here, nothing but spams from a for-profit lead-generator.

50.     In *Rosolowski v. Guthy-Renker LLC*, the court permitted From Names that were not the sender's official corporate name as long as the identify of the sender was readily ascertainable in the body. 230 Cal. App. 4th 1403, 1407, 1416 (2d Dist. 2014). However, the From Names in that case (Proactiv and Wen Hair Care) were the advertiser's fanciful trademarks and well-known brands with their own websites. But here, unlike the spams in *Rosolowski,* almost of the From Names are generic; they are not well-known trademarks and/or brands readily associated

with Defendants.  There is no way an ordinary consumer, looking at the emails in his/her inbox, could readily associate them with Defendants.

51.     Moreover, in many of the spams at issue, neither the sender nor the advertiser is readily ascertainable in the body of the spams, so *Balsam* would control, not *Rosolowski*.

**D.  Spams Sent From Domain Names Registered So As To Not Be Readily Traceable to the Sender Violate Business & Professions Code § 17529.5(a)(2)**

52.     Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information contained in or accompanying in email headers.

53.     Registration information for the domain names used to send spams is information contained in or accompanying email headers.

54.     "[H]eader information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS." *Balsam*, 203 Cal. App. 4th at 1101 (emphasis in original).

55.     Many, if not all of the spams that Plaintiffs received advertising Defendants were sent from domain names that:

- Did not identify Defendants or the sender on their face, and
- Were either "proxy" registered so as to not be readily traceable to the sender by querying the Whois database, or
- Were registered to fictitious companies that do not exist using mail boxes at a UPS store (or its equivalent).

in violation of Section 17529.5. *Balsam,* 203 Cal. App. 4th at 1097-1101.

56.     Plaintiffs could not identify Defendants or its spamming affiliates who sent most of the spams at issue by querying the Whois database for the domain names used to send many of the spams at issue.

57.     The use of boxes at commercial mail receiving agencies, like The UPS Store, as the address on a domain registration prevents a recipient from confirming who sent a spam email because The UPS Store's policy is to refrain from providing *any* information regarding its mailbox holders.  In fact, The UPS Store will not even confirm if an individual or an entity maintains a box at their store.  Therefore, spammers can falsely register mailboxes that they do not actually have and the consumer cannot confirm or deny that fact with The UPS Store.

**COMPLAINT**

58.     Using the example spam on Page 3, the domain name used to send that spam is withoutcreditscoremoneyabc.com.  That domain name is registered to an entity called "100OnBlack, Inc." whose contact person is named "Eric Brown."  The entity claims an address of 96 Main Street #128, Brunswick, ME.  That address was a box at The UPS Store (which has since moved).  Plaintiffs made an inquiry to The UPS Store, but it will not confirm or deny that 100OnBlack, Inc. is or was a boxholder there.  Also, a search of the Maine Secretary of State's website confirms that 100Onblack, Inc. is not a corporation registered there.  On information and belief, 100Onblack, Inc. is a fake company that does not exist and is not registered in any state or country.  On information and belief, Eric Brown is not a real person.  On information and belief, these fake names are used by the actual owner of the domain name for the purpose of preventing spam recipients from discovering their true identity.

**E.  Spams With False and Misrepresented Subject Lines Violate Business & Professions Code § 17529.5(a)(2)**

59.     Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information in email headers.

60.     The Subject Line is part of email headers.

61.     Many of the spams that Plaintiffs received contain Subject Lines with falsified and/or misrepresented information.  Plaintiffs allege that these Subject Lines are *absolutely* false and/or misrepresented and violate Section 17529.5(a)(2), as opposed to misleading *relative* to the contents/body of the spams, which would be a violation of Section 17529.5(a)(3).

62.     Example of falsified/misrepresented Subject Lines include:

- "Take a Facebook Survey and Receive $500" is false because, on information and belief, a recipient does not get $500 simply for taking a "Facebook Survey."
- "Background Check on You – 21 Mar 2015" is false because it implies that a background check was performed on the recipient on a certain date.  On information and belief, no background check was performed.
- "Your Application is Pending for a Cash Advance" is false because it implies that the recipient started an application when, in fact, no Plaintiff started an application with any Defendant.

**F. Spams With Subject Lines Misleading Relative to the Contents of the Spams Violate Business & Professions Code § 17529.5(a)(3)**

63.    Section 17529.5(a)(3) prohibits Subject Lines misleading relative to the contents or subject matter of the emails.

64.    Some of the spams that Plaintiffs received contain Subject Lines misleading relative to the contents of subject matter of the emails, which violate Section 17529.5(a)(3).

65.    Example of misleading Subject Lines include:

- "Use Facebook?  Take a Survey To Receive a *$500 Check*" (emphasis added) is misleading because the body says "Tell Us About Your Facebook Experience To Get a *$100 Visa Gift Card*!*" (emphasis added).  It goes on to say, "*Upon completion of purchase and/or subscription."  This is misleading for two reasons.  First, the subject line clearly states that if you take a survey, you get a $500 check – there is no contingency (like making a purchase or subscription).  Second, the subject line references a *$500 check*, but, the body only references a *$100 gift card*.

**G. Defendants are Strictly Liable for Spams Sent By their Marketing Agents**

66.    Plaintiffs are informed and believe and thereon allege that FLEX contracted with third party advertising networks and affiliates (a/k/a "publishers"), including but not limited to the other named Defendants, to advertise its clients' websites for the purpose of making a profit.

67.    No one forced Defendants to outsource any of their advertising to third party spam networks and spammers.

68.    Advertisers are liable for advertising in spams, even if third parties hit the Send button.

There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore.

The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements.

Bus. & Prof. Code § 17529(j)(k).

It is unlawful [ ] *to advertise in* a commercial email advertisement [ ] under any of the following circumstances…

Case No. 1:22-cv-01543-SKC   Document 24-2   filed 07/21/22   USDC Colorado   pg 19 of 23


Bus. & Prof. Code § 17529.5 (emphasis added).  Of course, Defendants' agents are also liable for sending unlawful spams.  *See Balsam*, generally.

69.     In fact, in *Hypertouch Inc. v. ValueClick Inc. et al*, the court of appeal held that advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were sent by third parties.

> *[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a commercial e-mail advertisement" that contains any of the deceptive statements described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails.

> Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity *strictly liable* for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient.

192 Cal. App. 4th 805, 820-21 (2d Dist. 2011) (emphasis added).  The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute.  *Id.* at 829.

## H.  Plaintiffs Sue for Statutory Liquidated Damages; No Proof of Reliance or Actual Damages is Necessary

70.     The California Legislature defined liquidated damages to be $1,000 per spam.  Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

71.     Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

72.     Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

73.     Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams.  *Recipients* of unlawful spam have standing to sue and recover liquidated damages.  Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

COMPLAINT

74.     However, Plaintiffs did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at their California email addresses. Bus. & Prof. Code § 17529(d), (e), (g), (h).  Regardless, Plaintiffs do not seek actual damages in this Action, only liquidated damages.  Bus. & Prof. Code § 17529.5(b)(1)(B).

**I.   Defendants' Actions Were Willful and Preclude any Reduction in Statutory Damages**

75.     Section 17529.5 authorizes this Court to reduce the statutory damages to $100 per spam. Bus. & Prof. Code § 17529.5(b)(2).  But, to secure the reduction, Defendants have the burden of proof to demonstrate not only that *established* practices and procedures to prevent unlawful spamming, but also that they *implemented* those practices and procedures, and that the practices and procedures are *effective*.

76.     Plaintiffs are informed and believe and thereon allege that Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

77.     Even if Defendants had established any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

78.     Even if Defendants reasonably designed practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not implemented so as to be effective.

79.     Moreover, Plaintiffs are informed and believe and thereon allege that Defendants intended to deceive recipients of their spam messages through the use of third parties' domain names without permission; falsified and/or misrepresented information in From Names, domain name registrations, and Subject Lines; and Subject Lines misleading as to the contents of the spams, as described herein.

80.     Subject Lines and From Names do not write themselves.  Domain names do not register themselves.  The false and misrepresented information contained in and accompanying the email headers are not "clerical errors."  Plaintiffs are informed and believe and thereon allege that Defendants went to great lengths to create falsified and misrepresented information contained in and accompanying the email headers in order to deceive recipients, Internet Service Providers, and spam filters.

81.     Plaintiffs are informed and believe and thereon allege that Defendants intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

82.     Punitive damages are appropriate to punish malicious and oppressive conduct by Defendants, and to deter others from engaging in such conduct. *See* Civ. Code § 3294.

## FIRST CAUSE OF ACTION

### [Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5]
### (Against All Defendants)

83.     Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

84.     Plaintiffs received the spams at issue within one year prior to filing this Complaint.

85.     Defendants advertised in, sent, and/or caused to be sent at least 722 unsolicited commercial email advertisements to Plaintiffs' California electronic mail addresses that had third parties' domain names without permission; materially falsified and/or misrepresented information contained in or accompanying the email headers, and/or Subject Lines misleading relative to the content or subject matter of the emails, in violation of Section 17529.5. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

86.     The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per email.

87.     Defendants have not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.

88.     Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Section 17529.5(b)(1)(C).

89.     The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and

1    financial burden of private enforcement is such as to make the award appropriate, and the

2    attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

3

4    WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

5

6                        **PRAYER FOR RELIEF**

7                       **(Against All Defendants)**

8   A.     An Order from this Court declaring that Defendants violated California Business &

9         Professions Code § 17529.5 by advertising in and sending unlawful spams.

10   B.     Liquidated damages jointly and severally against FLEX and MICHAEL HELD in the

11         amount of $1,000 for each of at least 722 unlawful spams, as authorized by Section

12         17529.5(b)(1)(B)(ii), for a total of at least $722,000, as set forth below:

| PLAINTIFF | DAMAGES SOUGHT | PLAINTIFF | DAMAGES SOUGHT |
|---|---|---|---|
| BARRETT | $8,000 | HELLMAN | $25,000 |
| BOWMAN-JONES | $18,000 | MORTON | $56,000 |
| BYRNES | $43,000 | KOTTONG | $235,000 |
| FERNANDEZ | $8,000 | POWERS | $67,000 |
| JOBE | $262,000 | **TOTAL** | **$722,000** |

C.     Liquidated damages against other Defendants – i.e., the advertisers in the spams,

        advertising networks, and affiliates (including but not limited to BRICK RUN and

        HELD, CCM, ADSSTARS, and PHUNNY) – jointly and severally with FLEX, in the

        amount of $1,000 for each spam that the other Defendants advertised in, sent, assisted in

        the sending, caused to be sent, or conspired to send, according to proof.

D.     Attorneys' fees as authorized by Section 17529.5(b)(1)(C) and Code of Civil Procedure

        § 1021.5 for violations of Section 17529.5.

E.     Punitive damages, in an amount to be determined by this Court.

F.     Costs of suit.

G.     Such other and further relief as the Court deems proper.

                     THE LAW OFFICES OF DANIEL BALSAM

Date:_____ March 16, 2016 _____     BY:_____ *Daniel L Balsam* _____

                       DANIEL BALSAM

                       Attorneys for Plaintiffs

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):*
Daniel L. Balsam (SBN 260423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
TELEPHONE NO.: 415-869-2873      FAX NO.: 415-869-2873
ATTORNEY FOR *(Name):* Plaintiffs Daniel Barrett et al

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Barrett v. Flex Marketing Group LLC et al

**FILED**
Superior Court of California
County of San Francisco

MAR 16 2016

CLERK OF THE COURT
BY: _____
Deputy Clerk

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | CGC 16-550974 JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary  b.[ ] nonmonetary; declaratory or injunctive relief  c.[✓] punitive
4. Number of causes of action *(specify):* 1
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 16, 2016

Daniel L. Balsam
_____        ▶ _____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|