Timothy J. Walton, SBN 184292
Jim Twu, SBN 175032
**WALTON TWU LLP**
9515 Soquel Drive, Suite 207
Aptos, CA 95003-4137
Phone (831) 685-9800
Fax: (650) 618-8687

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREAS FALLEY, an individual, <br> JUNG KIM, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> QUIBIDS LLC, an Oklahoma limited liability company, <br> QUIBIDS HOLDINGS LLC, a Delaware limited liability company, <br> FLEX MARKETING GROUP LLC, a New York limited liability company, <br> and <br> DOES 1-100, <br><br> Defendants. | **Case No.:** <br><br> **COMPLAINT FOR VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL EMAIL (Cal. Bus. & Prof. Code § 17529.5)** <br><br> 1. **Cal. Bus. & Prof. Code § 17529.5 (a)(2)** <br> 2. **Cal. Bus. & Prof. Code § 17529.5(a)(3)** <br><br> **DEMAND FOR JURY TRIAL** |

## I. NATURE OF THE ACTION

1. This action arises out of Defendants Quibids LLC and Quibids Holdings LLC (collectively "Quibids") and Flex Marketing Group LLC ("Flex") in concert with others, advertising in unlawful Unsolicited Commercial Emails ("spams") that violate Section 17529.5 of the California Business & Professions Code.

2. Plaintiffs are informed and believe and thereon allege that Quibids owns and operates the web site *quibids.com.* Plaintiffs are informed and believe and thereon allege that Quibids engages numerous third party advertising networks and affiliates (also known as "publishers") to

**1**
**COMPLAINT**

advertise for Quibids. Plaintiffs are informed and believe and thereon allege that some of these affiliates send millions of unwanted and unlawful commercial email messages to recipients that did not give consent to receive them. Many of the emails include false and/or misrepresented headers (including From Names that misrepresent *who* is advertising in the messages and *when* the emails were sent), and From Email Addresses containing domain names registered so as to not be readily traceable to the sender. Quibids is strictly liable for the actions of its networks and affiliates.

3. Plaintiffs Andreas Falley ("Falley") and Jung Kim ("Kim") bring this action to recover statutory liquidated damages where the emails advertised *quibids.com,* and the emails contained false and/or misrepresented information contained in or accompanying the email headers, and/or misleading subject lines, within one year prior to the filing of this Action or after the filing of this Action. Plaintiffs seek damages, equitable relief, attorneys' fees and costs pursuant to statute.

## II. PARTIES

4. Plaintiff Andreas Falley ("Falley") is an individual who is a resident of the State of California in the city and county of San Francisco and who receives email on a computer located within California. Falley received unlawful email advertising ("spams") linking to web pages at *quibids.com.* Falley did not give consent to Quibids to send him commercial email advertising.

5. Plaintiff Jung Kim ("Kim") is an individual who is a resident of the State of California in the city of Fremont and county of Alameda and who receives email on a computer located within California. Kim received unlawful email advertising ("spams") linking to web pages at *quibids.com.* Kim did not give consent to Quibids to send him commercial email advertising.

6. Plaintiffs are informed and believe and thereon allege that Defendant QUIBIDS LLC, is, and was at all relevant times, an Oklahoma limited liability company headquartered in and doing business in Oklahoma City, Oklahoma. The domain *quibids.com* is registered to "Quibids" in the WHOIS database, with an Oklahoma mail address.

7. Plaintiffs are informed and believe and thereon allege that Defendant QUIBIDS HOLDINGS LLC, is, and was at all relevant times, a Delaware limited liability company headquartered in and doing business in Oklahoma City, Oklahoma. The domain *quibids.com* is registered to "Quibids" in the WHOIS database, with an Oklahoma mail address.

8. Plaintiffs are informed and believe and thereon allege that Defendant FLEX MARKETING GROUP LLC is currently, and was at all relevant times, a New York limited liability company with a primary place of business in New York, New York.

9. Plaintiffs are informed and believe and thereon allege that Defendant FLEX MARKETING GROUP LLC was at all relevant times, a publisher client of Defendant Quibids, meaning that FLEX MARKETING GROUP LLC contracted with Quibids to effect the sending of some of the commercial email advertisements at issue.

10. The true names and capacities, whether individual, corporate, associate, representative, alter ego or otherwise, of Defendants and/or their alter egos named herein as DOES 1 through 100 inclusive are presently unknown to Plaintiffs at this time, and are therefore sued by such fictitious names pursuant to Federal Rule of Civil Procedure 15(a)(2). Plaintiffs will amend this Complaint to allege the true names and capacities of DOES 1 through 100 when the same have been ascertained. Plaintiffs are informed and believe and thereon allege that DOES 1 through 100, inclusive, do business in California by advertising in and/or sending unlawful email to California email addresses which advertises the web site at *quibids.com* , but those senders/advertisers may or may not be authorized to do business in California. Plaintiffs are further informed and believe and thereon allege that DOES 1 through 100, inclusive, were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events, happenings, and damages hereinafter set forth below. Plaintiffs are further informed and believe and thereon allege that DOES 1 through 100, inclusive, have concealed their true identities by providing false information on the WHOIS database.

11. Plaintiffs are informed and believe and thereon allege that the Defendants were not required in any way to work together but that they chose to do so in pursuit of monies, and that the fictitious DOE Defendants were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint venturers of each other, and that all acts alleged herein occurred within the course and scope of said agency, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in a contradiction with other allegations.

12. Where Plaintiffs make allegations in this Complaint based on information and belief, Plaintiffs are actually informed and believe the allegations. Whenever allegations in this Complaint are contrary or inconsistent, such allegations shall be deemed alternative.

### III. JURISDICTION

13. Plaintiff Falley is a resident of San Francisco and as a California resident received the emails in San Francisco. Thus, Plaintiff Falley has been harmed in San Francisco, California. *Calder v. Jones,* 465 US 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

14. Plaintiff Kim is a resident of Fremont and as a California resident received the emails in Fremont. Thus, Plaintiff Fremont has been harmed in Fremont, California. *Calder v. Jones,* 465 US 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

15. None of the named Defendants are California citizens. Thus there is actual diversity between the parties. 28 U.S.C. 1332(a)(1).

16. Both Plaintiffs have claims in excess of $75,000.00. 28 U.S.C. 1332(a).

### IV. INTRADISTRICT AASSIGNMENT

17. This Court has venue over the Action because Plaintiff Falley is a resident of San Francisco and as a California resident received the emails in San Francisco. Thus, Plaintiff Falley has been harmed in San Francisco, California. *Calder v. Jones,* 465 US 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

### V. THE UNLAWFUL SPAMS

**A.    The Emails at Issue are "Spams"**

18. Plaintiffs received the unsolicited commercial email at their California electronic mail addresses.

19. The email shown in Exhibit A, attached, is a representative sample with images blocked. The email shown as Exhibit B is a representative sample with full images.

**4**
**COMPLAINT**

20. The emails at issue are "commercial email advertisements"[1] because they advertise various consumer products sold at the *quibids.com* web site. The emails are "unsolicited commercial email advertisements"[2] because Plaintiffs never gave Quibids "direct consent"[3] to send them commercial emails, nor did Plaintiffs have a "preexisting or current business relationship"[4] with Quibids.

**B. Generic "From Names" Misrepresent *Who* is Advertising in the Spams and Violate Business & Professions Code § 17529.5(a)(2)**

21. Business & Professions Code § 17529.5(a)(2) prohibits misrepresented information in email headers.

22. Plaintiffs are informed and believe and thereon allege that the text in the "From Name" field (part of the email headers) in the instant spams is misrepresented.

23. Plaintiffs do not insist on any *particular* label (*e.g.,* "Quibids," "Quibids LLC," "Quibids Holdings LLC" etc.) in the From Name field. Rather, Plaintiffs contend that the text, whatever it is in the From Name header, cannot misrepresent *who* is advertising in the email. The From Name is important to an email user, because in almost all email programs, the inbox view only displays a list of emails, showing the From Name, Subject Line, and date. Therefore, even if the body of the email identifies the advertiser, the recipient will not know that until s/he has already

---

[1] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(c).

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(o).

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []" Bus. & Prof. Code § 17529.1(*l*).

clicked to open the email. The From Name is one of the only clues a recipient has about the identity of the sender of the email.

24. Here, the From Names all misrepresent *who* is advertising in the spams by using well-known company and brand names that are *not* the Defendants.

25. Falley received 391 spams between July 2, 2015 and December 3, 2015 inclusive, advertising *quibids.com* with a variety of falsified or misrepresented From Names including, but not limited to: "Macintosh Holiday FlashSale ," "GoPro Camera Liquidation Sale ," "Overstocked Auctions ," "Closeout Auctions," "MacBook BackToSchool ," "Samsung BackToSchool FlashSale," or "iPad_August_Overstock ". The complete list of spams with the From Names is provided in Exhibit C.

26. Kim received 75 spams between December 28, 2015 and February 26, 2016, inclusive, advertising *quibids.com* with a variety of falsified or misrepresented From Names similar to those received by Falley. The complete list of spams with the From Names is provided in Exhibit D.

27. None of the From Names identify Quibids. Plaintiffs are informed and believe and thereon allege that all of the From Names misrepresent *who* is advertising in the spams, because they falsely represent that they are from, endorsed by, or have something more than a tangential relationship with, Quibids or any actual sender or publisher.

28. In *Balsam v. Trancos Inc. et al*, the Court of Appeal of the First District affirmed in all respects the trial court's statement of decision. 203 Cal. App. 4th 1083, 1088 (1st Dist. 2012). The court confirmed that generic From Names that "do not exist or are otherwise misrepresented [when they] do not represent any real company and cannot be readily traced back to the true owner/sender" violate the statute, even when the advertiser's true address appears in the body of the email. The court affirmed the award of $1,000 liquidated damages per spam for the spams with From Names "Paid Survey," "Your Business," "Christian Dating," "Your Promotion," "Bank Wire Transfer Available," "Dating Generic,' and "Join Elite," but *not* "eHarmony" (because it identified eHarmony). *Id.* at 1093.

29. The false From Names "Macintosh Holiday FlashSale ," "GoPro Camera Liquidation Sale ," "Overstocked Auctions ," "Closeout Auctions," "MacBook BackToSchool ," "Samsung BackToSchool FlashSale," or "iPad_August_Overstock " (as well as others) are *more* false and deceptive than the From Names "Christian Dating" from the *Trancos* case, adjudged to be

**6**
**COMPLAINT**

unlawful by the trial court and affirmed by the court of appeal, because they suggest affinity with well-known trademarks and associated companies.

### C. Sending Domain Names Registered So As To Not Be Readily Traceable to the Sender Violate Business & Professions Code § 17529.5(a)(2)

30. Business & Professions Code § 17529.5(a)(2) prohibits misrepresented information contained in or accompanying email headers. In the *Trancos* case, the Court of Appeal held:

> [W]here, as in this case, the commercial emailer intentionally uses . . . domain names in its headers that neither disclose the true sender's identity on their face nor permit the recipient to readily identify the sender, . . . such header information *is* deceptive and *does* constitute a falsification or misrepresentation of the sender's identity. . . .
>
> Here, the domain names were *not* traceable to the actual sender. The header information is "falsified" or "misrepresented" because Trancos deliberately created it to prevent the recipient from identifying who actually sent the message. . . . . an email with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to Trancos.
>
> Allowing commercial emailers like Trancos to conceal themselves behind untraceable domain names amplifies the likelihood of Internet fraud and abuse-- the very evils for which the Legislature found it necessary to regulate such emails when it passed the Anti-spam Law.
>
> We therefore hold, consistent with the trial court's ruling, that header information in a commercial email is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS[5].

*Trancos*, 203 Cal. App. 4th at 1097-1101 (emphasis in original).

31. Plaintiffs are informed and believe and thereon allege that the WHOIS records for almost all the sending domains contain false information regarding the names and addresses of the actual domain owners and therefore are not traceable to the actual senders.

32. Plaintiffs are informed and believe and thereon allege that there is no database online where an email recipient could find any Defendant by searching for or tracing From Names.

---

[5] WHOIS refers to a database listing the ownership and contact information of Internet domain names.

**E.  Plaintiffs Sue for Statutory Liquidated Damages**

33.  Plaintiffs were injured as the result of receiving unlawful spams advertising Defendants' web sites.  *See* Bus. & Prof. Code § 17529(d), (e), (g), (h).

34.  Business & Professions Code § 17529.5 does not require Plaintiffs to quantify their actual damages.

35.  The California Legislature defined liquidated damages to be $1,000 per spam.  Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

36.  Plaintiffs are informed and believe and thereon allege that this figure is comparable with damages in other areas of consumer protection law, *e.g.,* $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b) and 47 U.S.C. §227 *et seq*.

37.  Plaintiffs' rightful and lawful assertion of the California Legislature's liquidated damages amount of $1,000 per email is necessary to further the Legislature's objective of protecting California residents from unlawful spam.

38.  Plaintiffs are informed and believe and thereon allege that Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial email advertisements that are in violation of Business & Professions Code § 17529.5.

39.  Even if Defendants had any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

40.  Plaintiffs are informed and believe and thereon allege that the false and deceptive elements of these spams represent willful acts, not clerical errors.

**F.  Defendants Are Strictly Liable for Spams Sent By Others**

41.  Advertisers are strictly liable for advertising in spams, regardless of whether an advertiser knew that the spams were sent, and even if contracted third parties hit the Send button.

> There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore.
>
> The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements.

Bus. & Prof. Code § 17529(j), (k).

42. No one forced Defendants to outsource advertising to third party spammers, and in *Hypertouch Inc. v. ValueClick Inc. et al*, the court held that advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were sent by third parties.

> [S]ection 17529.5 makes it unlawful for a person or entity "to advertise in a commercial email advertisement" that contains any of the deceptive statements described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial email, but applies more broadly to any entity that advertises in those emails.
>
> Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity *strictly liable* for advertising in a commercial email that violates the substantive provisions described in section 17529.5, subdivision (a) *regardless of whether the entity knew that such emails had been sent* or had any intent to deceive the recipient.

192 Cal. App. 4th 805, 820-21 (2d Dist. 2011) (emphasis added). The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute:

> [I]mposing strict liability on the advertisers who benefit from (and are the ultimate cause of) deceptive emails, forces those entities to take a more active role in supervising the complex web of affiliates who are promoting their products.

*Id*. at 829. *Hypertouch* was not an anomaly; it confirmed the general trend in anti-spam litigation in California and federal courts.

### FIRST CAUSE OF ACTION

**[Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5(a)(2)]**
**(Against All Defendants)**

43. Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

44. Defendants advertised in unlawful spams sent to the email addresses of Plaintiffs in California.

45. Each and every spam had materially misrepresented and/or deceptive information contained in or accompanying the headers in violation of Business & Professions Code § 17529.5(a)(2), due to the use of misrepresented From Names and/or From Email Addresses containing domain names registered so as to not be readily traceable to the sender.

46. The federal CAN-SPAM Act, 15 U.S.C. §§ 7701 *et seq.*, 18 U.S.C. § 1037 *et seq.* ("CAN-SPAM") sets the national standard for what constitutes "materially false or materially misleading header information". *Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal. App. 4th 805, 829; *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal. 4th 334, 340 fn. 5. Therefore, if header information is materially false or misleading under CAN-SPAM, the headers are materially "falsified, misrepresented, or forged" under California Business & Professions Code 17529.5(a)(2).

47. Header information is materially false or materially misleading under Section 7704(a)(1) where the "from" name is misleading in that it is designed to induce the recipient to open an e mail under a false pretense. For example, emails containing From Names such as "Macintosh Holiday FlashSale ," "GoPro Camera Liquidation Sale ," "Overstocked Auctions ," "Closeout Auctions," "MacBook BackToSchool ," "Samsung BackToSchool FlashSale," or "iPad_August_Overstock ", create the impression that a company with whom the recipient has an actual and ongoing transactional relationship is attempting to communicate with them regarding that relationship where no such relationship exists. In the alternative, the "From Lines" misrepresent information and/or deceive regarding the actual sender or advertiser.

48. Header information is materially false or materially misleading under 15 U.S.C. 7704(a)(1) where it contains a generic From Name and the email is sent from a privacy-protected domain name, such that the recipient cannot identify the sender from the From Name or the publicly available WHOIS information, or where the WHOIS information is false, inaccurate or misleading.

49. Here, all the emails contained a generic From Name and originated from a domain with false, inaccurate or misleading WHOIS information. Accordingly, these emails violate 15 U.S.C. § 7704(a)(1).

50. The CAN-SPAM Act makes it unlawful to send email messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. § 7704(a)(1).

51. The registration and use of a domain is a representation that the registrar will comply with applicable terms of service of the domain registrar.

52. "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of

**10**
**COMPLAINT**

initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading." 15 U.S.C. § 7704(a)(1)(A).

53. An email violates Section 7704(a)(1)(A) where the domain used to send the email was registered (i.e. obtained) or used for a purpose that violates the domain registrar's terms of service.

54. An email sent from such a domain violates the law regardless of whether the email contains a header that is technically accurate.

55. At least 47 of the emails in question originated from sender domains registered or used for purposes that violate the corresponding registrar's terms of service, despite the fact that the registration and use of the domain was a representation that such would be consistent with the terms of service.

56. At least 381 of the emails in question originated from sender domains with false addresses in the WHOIS database.

57. Each of the 47 emails identified above violates § 7704(a)(1)(A) as set forth herein.

58. All but four of the emails use hypertext mark up language ("html") in the body which contain remote images, which are not part of the email body but rather a link to a web server that could be anywhere on the Internet and controlled by any unknown third party. Most email clients automatically block remote images preventing recipients from seeing the sender upon initially opening the email. Exhibit A is an example of what the body of the emails at issue look like with the remote images blocked. Exhibit B is an example of what the body of the emails at issue look like when the remoted images are unblocked.

59. None of the WHOIS records for the sending domain are registered to Quibids and therefore Plaintiffs are informed and believe and thereon allege that Quibids did not send any of the emails at issue in this Action.

60. Plaintiffs are informed and believe and thereon allege that the sender of the emails is not apparent in the body of any of the emails when the remote images are blocked or unblocked.

61. All but four of the emails have the identifying information in the remote images and not in the body of the email.

62. Under CAN-SPAM, the text or body of an email cannot cure misrepresentations in the header information. In *Facebook v. Power Ventures, Inc*. (ND CA February 16, 2012) No. C 08-

05780 JW *12-14 (Order Granting Plaintiff's Summary Judgment and Denying Defendant's Summary Judgment) the court held:

> Defendants contend that even if the Court finds that they did initiate the emails at issue, they cannot be held liable for violations of the CAN-SPAM Act on the grounds that: (1) the text of the emails itself includes information about Power.com; and (2) Defendants had no control over the headers of the emails. The Court finds that both of these contentions are unavailing. First, the presence of a misleading header in an email is, in and of itself, a violation of the CAN-SPAM Act, insofar as the Act prohibits the use of misleading header information. Thus, the fact that the text of the emails at issue may have included information about Power.com is irrelevant, for purposes of liability under the Act.

63. Under CAN-SPAM, the body of an email cannot cure the material misrepresentations in the header information and, because CAN-SPAM sets the national standard, the body of an email cannot cure header violations of Section 17529.5(a)(2).

64. Plaintiffs were injured as the result of receiving unlawful spams advertising Defendants' web sites.  Bus. & Prof. Code § 17529(d), (e), (g), (h).

65. The California Legislature set liquidated damages at $1,000 per email that violates the statute.  Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

66. Defendants are not entitled to any reduction in liquidated damages because Defendants cannot demonstrate that they have reasonably effective systems in place to prevent the sending of unlawful spam in violation of the statute.

67. Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Business & Professions Code § 17529.5(b)(1)(C).

68. The attorneys' fees provision for a prevailing plaintiff is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5.  By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

**SECOND CAUSE OF ACTION**
**[Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5(a)(3)]**
**(Against All Defendants)**

69. Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

70. Three-hundred eighty-two (382) of the spams at issue have subject lines that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message, in violation of Business & Professions Code § 17529.5(a)(3), due to the use of misrepresented From Names and/or From Email Addresses containing domain names registered so as to not be readily traceable to the sender.

71. Examples of subject line violations include: (1) listing a product in the subject line that is not in the body of the email both without remote images activated and with remote images activated; and (2) listing a price for a product in the subject line with a substantially higher price in the body of the email both without remote images activated and with remote images activated.

72. Plaintiff were injured as the result of receiving unlawful spams advertising Defendants' web sites.  Bus. & Prof. Code § 17529(d), (e), (g), (h).

73. The California Legislature set liquidated damages at $1,000 per email that violates the statute.  Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

74. Defendants are not entitled to any reduction in liquidated damages because Defendants cannot demonstrate that they have reasonably effective systems in place to prevent the sending of unlawful spam in violation of the statute.

75. Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Business & Professions Code § 17529.5(b)(1)(C).

76. The attorneys' fees provision for a prevailing plaintiff is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5.  By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## **PRAYER FOR RELIEF**
### (Jointly and Severally Against All Defendants)

A. Wherefore, Plaintiffs pray for judgment against Defendants as follows:

B. Adjudge and decree that Defendants have engaged in the conduct alleged herein;

C.      For liquidated damages of $1,000 per unlawful email message pursuant to Business & Professions Code § 17529.5(b)(1)(B)(ii);

D.      For attorneys' fees pursuant to Business & Professions Code § 17529.5(b)(1)(C) and/or California Code of Civil Procedure 1021.5;

E.      Appropriate equitable and injunctive relief to remedy Defendants' violations of the laws of California, including but not necessarily limited to an order enjoining Defendant and others acting in concert with them from continuing their unlawful policies and practices;

F.      For costs, and pre-judgment and post-judgment interest; and

G.      For any and all such other and further relief that this Court may deem just and proper.

WALTON TWU LLP

Date:  July 1, 2016        BY: /s/ Timothy Walton
Timothy Walton
*Attorneys for Plaintiffs ANDREAS FALLEY and JUNG KIM*

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

WALTON TWU LLP

Date:  July 1, 2015        BY: /s/ Timothy Walton
Timothy Walton
*Attorneys for Plaintiffs ANDREAS FALLEY and JUNG KIM*