**Evan A. Schmutz (3860)**
  *eschmutz@djplaw.com*
**Jordan K. Cameron (12051)**
  *jcameron@djplaw.com*
**DURHAM JONES & PINEGAR, P.C.**
3301 N Thanksgiving Way, Suite 400
Lehi, Utah 84043
Telephone: (801) 375-6600
Fax: (801) 375-3865

Attorneys for Plaintiff XMission, L.C.

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>FLEX MARKETING GROUP, LLC, a New York limited liability company; FLOWERS TODAY, INC. (DBA BLOOMS TODAY), a Virginia corporation; DOES 1-40,<br><br>Defendants. | **COMPLAINT**<br><br>**(JURY DEMAND)**<br><br>Case No.:<br><br>Judge |

COMES NOW Plaintiff XMission, L.C. ("XMission"), and complains and alleges the following:

PARTIES, JURISDICTION AND VENUE

1. Plaintiff XMission is a Utah limited liability company with its principal place of business in Salt Lake City, Utah, and at all relevant times hereto was duly registered and licensed to do business in the State of Utah.

2.  Defendant Flex Marketing Group, LLC (hereinafter "Flex") is a New York limited liability company.

3.  Defendant Flowers Today, Inc., dba Blooms Today (hereinafter "Blooms"), is a Virginia corporation.

4.  On information and belief DOES 1-40 are individuals and companies doing business in association with the above named-defendants, either as shareholders, officers, members, affiliates and/or publishers, some or all or all of whom are alter egos of the named Defendant.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), for violations of the 15 U.S.C. §7701 *et seq.* ("CAN-SPAM Act of 2003" or the "Act"), and pursuant to 15 U.S.C. § 7706(g)(1) (original jurisdiction) for cases involving a civil action by an internet access service adversely affected by a violation of 15 U.S.C. §7704(a)(1), 15 U.S.C. §7704(b), or 15 U.S.C. § 7704(d), or a pattern and practice that violates subparagraphs (2), (3), (4), and/or (5) of 15 U.S.C. § 7704(a).

6.  This Court has personal jurisdiction over the Defendants because the Defendants, and each of them, are residents of the state of Utah, are businesses organized and existing under the laws of the state of Utah, and/or because Defendants have purposefully availed themselves of the privileges of conducting commercial activity in the forum state, in part, through the sending of thousands of commercial e-mails into the state. The exercise of jurisdiction is reasonable since Defendants know or should have known that they would be subject to the jurisdiction and

2

laws of the forum state when they sent, or caused the commercial e-mails to be sent to customers of an e-mail service provider located in Utah.

7. Venue is proper pursuant to 18 U.S.C. § 1391, as a substantial part of the unlawful actions by the Defendants, and each of them, occurred in this judicial district.

## GENERAL ALLEGATIONS

8. XMission was founded in 1993 as Utah's first Internet Service Provider ("ISP").

9. From its early days as a private, Utah ISP, to its current role as a global business Internet provider, XMission has expanded its technical offerings to include sophisticated cloud hosting, web hosting, e-mail service and hosting, collaboration tools, business VoIP phone service, and high speed internet connectivity solutions including optical Ethernet, copper and fiber.

10. Throughout its history, XMission has also worked with hundreds of Utah's nonprofit organizations by providing free web hosting services, and by sponsoring a variety of community-based events and facilities.

11. XMission is a widely known and well-recognized ISP in Utah.

12. XMission owns all the servers, routers, and switches on its network through which it hosts and provides its Internet access services for its customers.

13. XMission has an expansive network and infrastructure, which it has had to consistently update, upgrade and augment in order to combat ongoing SPAM problems.

14. XMission is the sole owner of all its hardware, and has complete and uninhibited access to, and sole physical control over, the hardware.

3

15. As a legitimate and leading ISP, XMission is a bona fide Internet Access Service ("IAS") as that term defined under 15 U.S.C. § 7702(11) and 47 U.S.C. § 231(e)(4).

16. XMission provides Internet access services to both commercial and residential customers.

17. The e-mail accounts hosted and served by XMission include e-mail accounts owned by third-party customers of XMission, e-mail accounts owned by employees and/or customers of XMission's third-party customers, e-mail account owned by employees of XMission, and also e-mail accounts owned by XMission itself.

18. For purpose of this Complaint, SPAM is defined as commercial electronic mail messages (e-mail).

19. From early January, 2015 through around August 16, 2015, XMission received many SPAM e-mails, sent and/or initiated by the Defendants collectively, which independently and collectively adversely affected XMission, and which independently and collectively contributed to an overall SPAM problem.

20. On information and belief, none of the owners of the e-mail addresses gave their affirmative consent, as it is defined in 15 U.S.C. § 7702(1) to receive commercial e-mails from the Defendants and/or about the Defendants' products, services, or websites.

21. On information and belief, Flex is the "Initiator" of the e-mail messages as it either transmitted or procured the transmission of the e-mails in question as such term is defined in 15 U.S.C. § 7702 and 7706(g)(2).

22. Flex directly transmitted, or caused the transmission of, at least 77,936 SPAM e-mails at issue in this Complaint during the time period in question.

SLC_2422416

23. On information and belief, Blooms is the "Sender" of at least 21,353 e-mails at issue in this Complaint as its product, service, and/or website is advertised in the e-mail messages, and as it either transmitted or procured the transmission of the e-mails in question as such term is defined in 15 U.S.C. § 7702(12) and 7706(g)(2).

24. Blooms communicated to XMission that Flex is the source of the vast majority of the Blooms e-mails.

25. Therefore, through Flex, Blooms transmitted, or caused the transmission of the vast majority of the Blooms SPAM e-mails at issue in this Complaint during the time period in question.

26. On information and belief, various of the DOES 1-40, are "Senders" or "Initiators" of the remaining e-mails collectively, as each of them, in some way, benefitted from the advertising in the messages and/or initiated or procured the e-mails in question, and who have initiated or sent the e-mails with the knowledge and/or active participation of Defendant.

27. The Blooms e-mails were part of a larger campaign of e-mails targeted at XMission in Utah and initiated by Flex at the direction of "Senders" such as Blooms and other Does.

28. Each of the e-mails is a commercial message and contains commercial content.

29. The e-mails, and each of them, were received by XMission on its mail servers located in Utah.

30. Throughout its business, XMission has expended well in excess of $3,000,000 in hardware acquisition, maintenance and related expenses to increase capacity to deal with

5

increased SPAM and related harm, SPAM filtering expenses, and employee time in dealing with problems caused by its receipt of SPAM generally.

31. XMission expends approximately $100,000 to $200,000 per year in dealing with SPAM related issues and associated employee time, exclusive of attorney fees.

32. The harm XMission continues to suffer, as the result of its collective SPAM problem, is much more significant than the mere annoyance of having to deal with SPAM or the process of dealing with SPAM in the ordinary course of business (i.e., installing a spam filter to flag and discard spam).

33. The harm XMission has suffered, and continues to suffer, is manifested in financial expense and burden significant to an ISP, such as: lost employee time; lost profitability; the necessity to purchase and dedicate equipment specifically to process SPAM that could otherwise be dedicated providing internet access services; harm to reputation; and customer and e-mail recipient complaints, including 19,702 e-mails that XMission customers complained of by reporting the e-mails as SPAM.

34. Each of the e-mails in question violates multiple CAN-SPAM provisions.

35. The majority of the SPAM e-mails XMission receives, including the e-mails in question, violate the CAN-SPAM Act in one or more ways, and contributed to a larger SPAM problem.

## COUNTS AGAINST FLEX MARKETING GROUP

### COUNT 1 - CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)

36. Each of the previous paragraphs is realleged herein.

37. The CAN-SPAM Act makes it unlawful to send e-mail messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. § 7704(a)(1).

38. Header information is materially false or misleading under Section 7704(a)(1) where it includes an invalid or unregistered sender domain. In other words, the sender domain identified in the e-mail header as the domain from which the e-mail was sent is not a domain name that legitimately exists, could not be used to transmit an e-mail, and is therefore inherently false.

39. Here, the header information in at least 56 e-mails contained sender domains that were spoofed (i.e., identifying an unrelated third party), or otherwise false or unregistered. Accordingly, these e-mails violate 15 U.S.C. § 7704(a)(1).

40. Header information is materially false or materially misleading under Section 7704(a)(1) where the "from" name is misleading in that it is designed to induce the recipient to open an e-mail under a false pretense. For example, E-mails containing "from" lines such as "Court Records Notice", "Predator Alert", "Credit-Score Updates", "Credit Alert", and "Sex Offender Alert", create the impression that a company with whom the recipient has an actual and ongoing transactional relationship is attempting to communicate with them regarding that relationship where no such relationship exists. In the alternative, the "from" lines use scare tactics to induce the recipient to open the e-mail under a false pretense.

41. Here, the header information in at least 6,280 e-mails contained sender domains that were deceptive. Accordingly, these e-mails violate 15 U.S.C. § 7704(a)(1).

SLC_2422416

42. Header information is materially false or materially misleading under Section 7704(a)(1) where it includes an inaccurate transmission IP address. In other words, the transmitting party represented that the e-mail was being sent from a specific domain, when in fact, the IP address used to actually transmit the e-mail does not match the represented sender domain. Under these circumstances, the header information is false on its face because it contains false transmission information.

43. Here, at least 14,241 e-mails contained e-mail headers with IP addresses that were false or misleading in that they did not match the identified sender domains. Accordingly, these e-mails violate 15 U.S.C. § 7704(a)(1).

44. Header information is materially false or materially misleading under Section 7704(a)(1) where it contains a generic "from" name and the e-mail is sent from a privacy-protected domain name, such that the recipient cannot identify the sender from the "from" name or the publicly available WHOIS information, or where the WHOIS information is false, inaccurate or misleading.

45. Here, at least 10,112 e-mails contained a generic "from" name and originated from a privacy-protected domain. Accordingly, these e-mails violate 15 U.S.C. § 7704(a)(1).

46. The aforementioned accounts for 30,689 violations of 15 U.S.C. § 7704(a)(1).

47. Pursuant to 15 U.S.C. § 7706(g)(3), XMission prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1).

<u>COUNT 2 - CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)(A)</u>

48. Each of the previous paragraphs is realleged herein.

SLC_2422416

49. The CAN-SPAM Act makes it unlawful to send e-mail messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. § 7704(a)(1).

50. "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading." 15 U.S.C. § 7704(a)(1)(A).

51. The registration and use of a domain is a representation that the registrar will comply with applicable terms of service of the domain registrar.

52. An e-mail violates Section 7704(a)(1)(A) where the domain used to send the e-mail was registered (i.e. obtained) or used for a purpose that violates the domain registrar's terms of service.

53. An e-mail sent from such a domain violates the law regardless of whether the e-mail contains a header that is technically accurate.

54. Approximately 65,741 of the e-mails in question originated from sender domains registered or used for purposes that violate the corresponding registrar's terms of service, despite the fact that the registration and use of the domain was a representation that such would be consistent with the terms of service.

55. Each of the 65,741 e-mails identified above violates § 7704(a)(1)(A) as set forth herein.

56. Pursuant to 15 U.S.C. § 7706(g)(3), XMission prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1)(A).

SLC_2422416

### COUNT 3 - CAN-SPAM ACT, 15 U.S.C. § 7704(a)(2)

57. Each of the previous paragraphs is realleged herein.

58. It is a violation of the CAN-SPAM Act to send a commercial e-mail message that contains a subject heading likely to mislead the recipient about a material fact regarding the contents of the e-mail message or which would induce a recipient to view the message under false pretenses.

59. The use of scare tactics or other inducement language, or language that creates the appearance of an existing relationship between the parties, where no such relationship exists (e.g., first name, RE:., Fwd.), may subject a Sender and Initiator to liability if such is misleading or false.

60. Here, 14,868 e-mails contain subject headings that contain false or misleading inducement language, falsely created the appearance of an existing relationship, or otherwise likely to mislead the recipient about a material fact regarding the e-mail.

61. Pursuant to 15 U.S.C. § 7706(g)(3), XMission prays for relief in the amount of $25 per violation of 15 U.S.C § 7704(a)(2).

### **COUNTS AGAINST FLOWERS TODAY, INC.**

### COUNT 1 - CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)

62. Each of the previous paragraphs is realleged herein.

63. The CAN-SPAM Act makes it unlawful to send e-mail messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. § 7704(a)(1).

SLC_2422416

64. Header information is materially false or materially misleading under Section 7704(a)(1) where it contains a generic "from" name and the e-mail is sent from a privacy-protected domain name, such that the recipient cannot identify the sender from the "from" name or the publicly available WHOIS information.

65. Here, 54 Blooms e-mails contained a generic "from" name and originated from a privacy-protected domain. Accordingly, these e-mails violate 15 U.S.C. § 7704(a)(1).

66. Header information is materially false or materially misleading under Section 7704(a)(1) where it includes an inaccurate transmission IP address. In other words, the transmitting party represented that the e-mail was being sent from a specific domain, when in fact, the IP address used to actually transmit the e-mail does not match the represented sender domain or does not resolve to any actual domain. Under these circumstances, the header information is false on its face because it contains false transmission information.

67. Here, 825 Blooms e-mails contained e-mail headers with IP addresses that were false in that they did not match the identified sender domains or did not resolve to any legitimate domain. Accordingly, these e-mails violate 15 U.S.C. § 7704(a)(1).

68. The aforementioned accounts for 879 violations of 15 U.S.C. § 7704(a)(1).

69. Pursuant to 15 U.S.C. § 7706(g)(3), XMission prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1).

COUNT 2 - CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)(A)

1. Each of the previous paragraphs is realleged herein.

11

2.     The CAN-SPAM Act makes it unlawful to send e-mail messages that contain, or are accompanied by, materially false or materially misleading Header Information.  15 U.S.C. § 7704(a)(1).

3.     "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading."  15 U.S.C. § 7704(a)(1)(A).

4.     The registration and use of a domain is a representation that the registrar will comply with applicable terms of service of the domain registrar.

5.     An e-mail violates Section 7704(a)(1)(A) where the domain used to send the e-mail was registered (i.e. obtained) or used for a purpose that violates the domain registrar's terms of service.

6.     An e-mail sent from such a domain violates the law regardless of whether the e-mail contains a header that is technically accurate.

7.     Approximately 20,437 of the e-mails in question originated from sender domains registered or used for purposes that violate the corresponding registrar's terms of service, despite the fact that the registration and use of the domain was a representation that such would be consistent with the terms of service.

8.     Each of the 20,437 e-mails identified above violates § 7704(a)(1)(A) as set forth herein.

9.     Pursuant to 15 U.S.C. § 7706(g)(3), XMission prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1)(A).

## REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

A. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1).

B. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1)(A).

C. Entry of judgment in the amount of $25 per violation of 5 U.S.C. §7704(a)(2).

D. Treble damages pursuant to 15 U.S.C. § 7706(g)(3).

E. Attorneys' fees and costs pursuant to 15 U.S.C. § 7706(g)(4).

F. Pre and post-judgment interest at the highest rate permitted by law.

G. Entry of permanent injunction against each Defendant prohibiting each Defendant from sending or causing to be sent e-mail message to XMission and its customers.

H. All other relief deemed just in law or equity by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable of right in this action, pursuant to Rule 38(b), Federal Rules of Civil Procedure.

DATED this 20th day of August, 2015.

DURHAM, JONES & PINEGAR, P.C.

/s/ Evan A. Schmutz
Evan A. Schmutz
Jordan K. Cameron
*Attorneys for Plaintiff*

Plaintiff's Address:
51 East 400 South
Suite 200
Salt Lake City, Utah 84111

13

SLC_2422416