UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01543-CMA-SKC

JOSHUA LAPIN,

                Plaintiff,

v.

FLEX MARKETING GROUP, LLC,
AMERICAN AUTO SHIELD LLC,
NRRM LLC d/b/a CARSHIELD,
JOHN DOE SENDER,

                Defendants.

**DEFENDANT AMERICAN AUTO SHIELD LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

American Auto Shield LLC ("AAS") moves to dismiss the complaint ("Complaint") of Joshua Lapin ("Lapin").

## INTRODUCTION

The Complaint repeatedly states in conclusory fashion that AAS "advertised" to Lapin through unsolicited emails. The Complaint similarly concludes the emails violate South Dakota's "anti-spam" law and that AAS is strictly liable to Lapin for damages. But the emails (attached to the Complaint and therefore part of the allegations) and Lapin's factual allegations in the Complaint controvert the pleading's naked conclusions.

The actual emails tell a vastly different story: AAS did not advertise in the emails. And, the factual allegations averred make clear AAS does not market and did not participate in the formulation or use of the emails.

The emails consist of advertisements for vehicle service contracts ("VSCs") sold by CarShield and sent by entities like Defendant John Doe Sender, who, according to Lapin, CarShield hired to send CarShield promotional emails. CarShield itself is a marketing company that sells VSCs. The emails mention AAS only in a disclaimer to distinguish between what is being advertised, that is, CarShield-sold VSCs, and the subsequent administration of those VSCs once purchased. The emails, on their face, simply are not advertising by AAS.

Beyond Lapin's failure to sufficiently plead AAS is an advertiser, the Complaint fails because Colorado does not recognize a private right of action for the alleged spamming and indeed such laws violate Colorado public policy. AAS joins, in part, Flex Marketing Group's motion to dismiss (Doc. No. 20) and adds that the principles underlying the choice of law "most significant relationship" test further weigh in favor of application of Colorado law. That law does not permit Lapin to bring his claim.

## STATEMENT OF PLAINTIFF'S ALLEGATIONS

AAS provides "automotive claims administration." Compl. ¶ 3. AAS also develops VSCs. *Id.*

AAS does not market VSCs. "[M]uch of AAS's marketing is performed by a different entity, CarShield." Compl. ¶ 3. CarShield is a "de-facto marketing company" that "ambitiously markets and promotes" VSCs. *Id.*; *see also id.* ¶ 4 (CarShield promotes VSCs).

To market VSCs, CarShield relies on third parties to contact consumers that have "previously expressed interest in products or services" offered by CarShield. Compl. Exs. A & B. Third parties that CarShield uses to market VSCs include Defendant John Doe Sender. Compl. ¶ 6.

AAS does not sell VSCs. VSCs developed by AAS are marketed and sold "under the brand CarShield." Compl. ¶ 3.

AAS administers VSCs. Once CarShield sells a VSC, the VSC is "administered by [AAS]." *Id. See also* Compl. Exs. A & B (noting CarShield is a "company marketing vehicle service contracts administered by [AAS]").

Lapin is a "digital nomad" and in a "different country every 30 days." Compl. ¶¶ 2, 39. He is a South Dakota resident under a unique state program for those who do not have a residence in another U.S. state. *Id.* Lapin does not live in South Dakota. *Id*. In 2021, Lapin received 57 emails that he contends CarShield advertised on "behalf of itself and AAS." *Id.* Defendants Flex Marketing Group ("Flex") and John Doe Sender, which was hired by CarShield, initiated or sent the emails to Lapin. Compl. ¶¶ 6, 7, 36.

## ARGUMENT

**I.   LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a claim must be supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 US 544, 556 (2007)). A "complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly* at 570). The "plausibility" standard asks for more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678. When facts alleged are as consistent with lawful as unlawful conduct, a claim "stops short" of plausibility. *Id.* A court is not to accept as true allegations that are legal conclusions. *Id*. *See Hackford v. Babbitt,*

14 F.3d 1457, 1465 (10th Cir. 1994). Well-pled facts are taken as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* at 678.

In a 12(b)(6) motion, the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Baskerville, v. Emp't Firm, Inc.*, 2021 U.S. Dist. LEXIS 26306, *6 (D. Colo. Jan. 12, 2021). Allegations that "contradict a properly considered document are not well-pleaded facts that the court must accept as true." *Farrell-Cooper Mining Co. v. United States DOI*, 728 F.3d 1229, 1237 n.6 (10th Cir. 2013).

## II. THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE AAS IS AN ADVERTISER, RENDERING LAPIN'S ANTI-SPAM ACT CLAIM IMPLAUSIBLE

Lapin's claim against AAS hinges on his assertion that AAS is an "advertiser." SDCL 37-24-41(1) defines an "advertiser" as a "person or entity that advertises through the use of commercial e-mail advertisements." Under South Dakota's anti-spam act, SDCL 37-24-47, a person may not "advertise in a commercial e-mail advertisement" under certain conditions. If AAS is not an advertiser, Lapin's SDCL 37-24-27 claim against AAS, which is Lapin's only claim, fails. *See* Compl. ¶ 35 (alleging AAS strictly liable as an advertiser).

The exhibits to the Complaint and Lapin's Complaint contentions, including that CarShield exclusively markets AAS developed VSCs through third parties, demonstrate AAS did not "advertise" in violation of South Dakota's anti-spam law.

Complaint Exhibits A and B consist of emails unambiguously advertising CarShield's VSC services. The emails use CarShield's logo and headers identifying CarShield by name (e.g.,

CarShield Auto Protection, CarShield Offer, and CarShield Quote). *See* Compl. Exs. A & B, *passim*. The emails also use tag lines such as, "CarShield Plans as low as $99/Month!" and substantive disclosures about CarShield, including: (1) "CarShield is an independent nationwide company marketing vehicle service contracts," (2) "CarShield operates only in the United States," (3) recipients are "receiving this email based on your previously expressed interest in products or services through an affiliate marketing partner of CarShield," and (4) that emails were "sent to you by the 3rd party, not from CarShield itself." *Id.*

The emails – supposed UCEs – dovetail with Lapin's allegation that CarShield is an "advanced 'Vehicle Service Contract' marketing company, who exclusively promotes [AAS VSCs] in relation to the UCE's that Plaintiff received." Compl. ¶ 4. Taken as true, these allegations state CarShield was marketing VSCs through the emails.

Conversely, the emails use a "Disclaimer" to distinguish between the company doing the selling (i.e., CarShield) and downstream services provided by AAS (i.e., VSC administration). Compl. Exs. A & B. The emails make no other reference to AAS. None.

The emails encourage recipients to contact CarShield to obtain a free quote for a VSC and inform the recipient that if they purchase a VSC it will be "administered by American Auto Shield." Compl. Exs. A & B. Again, the emails dovetail with Lapin's allegations about the relationship between AAS and CarShield: "CarShield ambitiously markets [VSC] plans, which are actually administered by American Auto Shield." Compl. ¶ 4.

Moreover, the Complaint contends Defendant John Doe Sender was "***hired / contracted by CarShield to assist in marketing***, and one of the results of this third-party marketing is that John Doe Sender sent" the subject emails. Compl. ¶ 6 (emphasis added). Lapin does not assert

AAS dealt with or had a business relationship with John Doe Sender or the email "initiator," Defendant Flex. The absence of such assertions is consistent with the themes of the Complaint – CarShield, not AAS, engaged in VSC marketing; CarShield, not AAS, had emails sent; and CarShield, not AAS, used third parties to send the emails. Compl. Exs. A & B.

Considering the above allegations from the Complaint and considering the facts in the emails attached to the Complaint, Lapin has failed to sufficiently contend AAS is an advertiser under South Dakota law. Without this contention, Lapin has not plausibly alleged AAS violated SDCL 37-24-47.

Lapin's conclusory statements in the Complaint to the contrary cannot lead to a different result. Calling AAS an "advertiser," without more, does not make it one. *Hackford,* 14 F.3d at 1465 ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions."). This is particularly true here, where Lapin's empty allegations contradict the emails attached to the Complaint. *See Farrell-Cooper Mining*, 728 F.3d at 1237 n.6.

### III. THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE COLORADO LAW APPLIES AND COLORADO DOES NOT RECOGNIZE A PRIVATE RIGHT OF ACTION FOR THE CONDUCT ALLEGED

AAS joins Flex's motion to dismiss, Section II. C-D. *See* Doc. No. 20.[1] In those sections of Flex's motion, it accurately notes that a federal court applies the choice of law rules of the state in which it sits, that Colorado applies the "most significant relationship" test in determining applicable law, and that four types of "contacts" are to be evaluated as part of the test. *Id.* at 9 (citations omitted). AAS agrees that those contacts favor application of Colorado law (*id.* 10-

---

[1] Flex interprets the Complaint as alleging that AAS sells VSCs and does so from AAS's headquarters. Doc. No. 20 at 11. AAS does not read the Complaint as making those allegations, and to the extent they are alleged, they are conclusory statements that do not merit this Court's consideration.

13), and further notes that the principles underlying the "most significant relationship" test solidify the application of Colorado law. When Colorado law is applied here, for the reasons in Section D of Flex's motion, Lapin's claim becomes implausible because Colorado, like 47 other states, does not recognize a private right of action under the facts alleged in the Complaint. Doc. No. 20 at 13.

      **A.**    **The Seven Principles of the Most Significant Relationship Test Favor Application of Colorado Law.**

The most significant relationship test is determined by applying the following principles: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability and uniformity of result, and (7) ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6 (1971). When applied to the allegations here, the factors/principles weigh toward the use of Colorado law.

      1.    **Permitting South Dakota Residents to Bring Anti-Spam Actions in Colorado would be Inconsistent with Colorado's Legal Framework for Addressing Unsolicited Email.**

In formulating choice of law rules a state should account for the needs and policies of other U.S. states. *Id*. § 6(2) cmt. d. Colorado and South Dakota have used legislation to address unsolicited commercial emails and to install mechanisms to pursue those who break the states' respective anti-spam laws. South Dakota's law allows individual residents, in addition to its attorney general, the right to sue. SDCL § 37-24-47. Colorado's law does not provide a private right of action. C.R.S. § 6-1-702.5.

Colorado, like the federal government, has empowered only government enforcers and certain internet industry actors to assail improper email marketing. *Id. See, e.g., XMission, L.C. v. Click Sales, Inc.*, 2019 U.S. Dist. LEXIS 63686, *24 (D. Utah Apr. 11, 2019) (consumers "have no private right of action under [federal] CAN-SPAM [act]").

In Colorado, the legislature's preference and "intent" for combatting spam "is to exercise state authority in a manner consistent with, and to the maximum extent permissible …." C.R.S. § 6-1-702.5(6)(c). If South Dakota residents were free to bring private claims in Colorado, that would clash with Colorado's legislative intent and public policy. This factor/principle favors Colorado law.

> 2. **Colorado Seeks to Avoid Opening the Flood Gates to Litigation by Limiting Enforcement of its Anti-Spam Statute to Specific Actors.**

Colorado's statute authorizes causes of action by the attorney general and by email service providers. C.R.S. § 6-1-702.5(4)(a), (5)(a). Colorado, like South Dakota, has a vested interest in protecting residents from spam. Unlike South Dakota, Colorado's limitation on rights of action serves the public interest of not overburdening the judicial system. *See, e.g., Citizens for Quiet Skies v. Mile-Hi Skydiving Ctr., Inc.*, 2015 Colo. Dist. LEXIS 1503, *23 (noting public policy of avoiding opening the "floodgates" to excessive litigation). Both states' laws provide the opportunity for redress, and Colorado chooses to rely on the state's highest law enforcement officer to protect its residents. Using South Dakota law, however, would potentially open the door to countless private actions. Consequently, this factor/principle overwhelmingly favors Colorado law.

3.   **South Dakota's Interest in Protecting Absent State "Residents" is Not Compelling.**

South Dakota has an obvious interest in protecting the state's residents. Lapin, however, is an atypical "resident." He maintains residency under a state program "designed to provide residency to perpetual travelers." Compl. ¶ 2. His only alleged connections to South Dakota are the minimum needed to remain qualified for legal residency—a state driver's license, state voter registration, and a rented mailbox in Sioux Falls that he uses to have an address on his license and voter registration. *Id*. Lapin was "physically present outside of the State of South Dakota at most times material" to the allegations in the Complaint (*id.* ¶ 44), and wrote the Complaint from Bali, Indonesia (*id.* ¶ 39).

Given Lapin's lack of connection to his "home" state, extending his rights as a South Dakota resident so that he can litigate his anti-spam claims in Colorado makes no sense. Moreover, even if Colorado allowed its residents to bring claims under the state's anti-spam act, Lapin would not qualify as a resident. Unlike South Dakota, Colorado's residency requirements are more demanding and require more of a sense of permanence than that associated with a rented mailbox. *See, e.g., Colo. Code Regs.* 39-22-103(8)(a) (a person is a Colorado "resident" if his/her "place of abode is in Colorado" and when away from the abode he/she intends to return, or the person has a "permanent place of abode in Colorado" and spends more than six months there each year). This factor/principle also favors applying Colorado law.

4.   **Viewed Objectively, AAS and Lapin's Expectations do Not Point to the Application of South Dakota Law.**

It is unfair and improper to hold an entity liable under the local law of one state when it molded its conduct to conform to the requirements of another state. RESTATEMENT (SECOND)

4869-7683-5882.1                                          9

CONFLICT OF LAWS § 6(2) cmt. g. AAS is at "home" in Colorado (Compl. ¶ 39) and as alleged in the Complaint, did not participate in the spam about which Lapin complains, wherever it is that Lapin might be dwelling abroad (*id.* ¶ 2).

Even if AAS knew Lapin was a world traveler, it is not plausible that it would say to itself, "we should be ready to be sued under South Dakota law because a digital nomad living in Bali may somehow get an email that mentions our company." It is not reasonable to assume that AAS should have expected to be a defendant under the facts alleged. And for his part, Lapin's international, remote lifestyle hardly suggests a person in his position should reasonably expect that simply because he has a "personal mail box" in South Dakota (*id.* ¶ 2), he can haul a Colorado company into Colorado federal court to face a claim under South Dakota's anti-spam law. This factor/principle weighs in Colorado law's favor.

### 5. Colorado's and South Dakota's Statutes Address the Interests Underlying the Relevant Fields of Law at Issue.

The particular, applicable fields of law here involve protecting privacy interests of individuals and the proper use of telecommunications systems.[2] Colorado and South Dakota, through their statutes, seek to protect individuals from unwanted spam. Colorado uses the office of its attorney general and email service providers, who have a substantial interest in quashing improper use of email communications, to accomplish that goal. Under either Colorado or South Dakota law then, Lapin's interest in avoiding unwanted spam can be protected.

Concerning an interest in proper use of telecommunications systems, the government of a state, rather than its individual citizens, is in the best position to advance that interest. Colorado

---

[2] *Cf.* https://www.law.cornell.edu/wex/inbox/state_anti-spam_laws ("Legal scholars and practitioners tend to treat anti-spam law … as part of a larger framework of privacy law, or … telecommunications and computer-related law.").

and South Dakota allow for attorney general actions. This factor/principle favors Colorado as well.

6. **Application of South Dakota Law would Create Uncertainty Not Predictability.**

Predictability and uniformity of result in the application of law is particularly valuable "in areas where the parties are likely to give advance thought to the legal consequences of their transactions." Restatement (Second) Conflict of Laws § 6(2) cmt. i.

Application of South Dakota's law in Colorado would not aid in enhancing predictability to transactions. Application of South Dakota's anti-spam statute, as construed by Lapin in the Complaint, would allow a person living anywhere in the world and possessing a unique South Dakota "residency" status to extract thousands of dollars from entities like the instant defendants (in the case of Lapin, he is seeking $171,000). How could those entities give "advance thought" to the consequences of their activities in such a bizarre factual scenario? The answer is, they could not. This factor/principle weighs in favor of application of Colorado law.

7. **Colorado and South Dakota's Statutes Both are Easy to Determine and Apply to the Parties' Dispute.**

The respective and potentially applicable laws of each state are known. *See* SDCL § 37-24-47; C.R.S. § 6-1-02.5. The ability of the Court to apply those laws to this action, at this stage of the proceedings, is straight forward. In fact, the application of the Colorado statute is particularly simple. If the statute applies, Lapin has no private right of action. This factor/principle weighs in favor of applying Colorado law or is neutral.

When all principles are weighed, the scale tips overwhelmingly to the application of Colorado law and its resulting bar on Lapin's ability to bring his anti-spam claim against AAS.

## CONCLUSION

For the reasons above and because amendment would be futile,[3] the Complaint should be dismissed with prejudice.

Dated:  July 27, 2022          Respectfully Submitted,

By:  s/*Jeffrey H. Kass*
Jeffrey H. Kass
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Jeffrey.Kass@lewisbrisbois.com
Tel.:    303.861.7760
Fax:    303.861.7767

*Attorneys for Defendant*
*American Auto Shield, LLC*

---

[3] When amendment of a complaint would be futile, the complaint should be dismissed with prejudice. *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999). Futility reigns here because the Complaint's exhibits demonstrate AAS is not an advertiser, eliminating application of South Dakota's anti-spam law to AAS and because there is no right of private action under an anti-spam claim in Colorado.

## CERTIFICATE OF SERVICE

I certify that on July 27, 2022, I presented the foregoing DEFENDANT AMERICAN AUTO SHIELD LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) to the Clerk of the Court for filing and uploading to the CM/ECF system, which action caused automatic electronic notification of the filing to be served upon the following:

Charles Gibson
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202-5647
Tel.:   303-244-4558
gibson@wtotrial.com

*Attorneys for Defendant*
*Flex Marketing Group, LLC*

Derek Alan Newman
Newman Du Wors LLP
2101 Fourth Avenue, Suite 1500
Seattle, WA 98121
Tel.:   206-274-2800
ecf@newmanlaw.com

*Attorneys for Defendant*
*Flex Marketing Group, LLC*

Craig Ruvel May
Wheeler Trigg O'Donnell LLP-Denver
370 17th Street, Suite 4500
Denver, CO 80202-5647
Tel.:   303-244-1800
Fax:   303-244-1879
may@wtotrial.com

*Attorneys for Defendant*
*Flex Marketing Group, LLC*

I further certify that on July 27, 2022, the foregoing DEFENDANT AMERICAN AUTO SHIELD LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) was served electronically (via email) upon the following:

Joshua Lapin
401 East 8th Street, Suite 214
PMB 7452
Sioux Falls, SD 57103
Tel.:   714-654-8886
Fax:   307-655-1269
thehebrewhammerjosh@gmail.com

*Pro Se Plaintiff*

                                            s/*Jeffrey H. Kass*
                                            of LEWIS BRISBOIS BISGAARD & SMITH LLP