Joshua Lapin, Pro Se Plaintiff

401 E 8th ST
STE 214 PMB 7452
Sioux Falls SD 57103

Email: thehebrewhammerjosh@gmail.com

Facsimile: (605) 305-3464

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO - DENVER

| | |
|---|---|
| Joshua Lapin | ) Case No.: 1:22-cv-01543-CMA-SKC |
| Plaintiff, | ) |
| vs. | ) **PLAINTIFF'S RESPONSE TO NRRM** |
| Flex Marketing Group, LLC | ) **LLC's MOTION TO DISMISS PURSUANT** |
| American Auto Shield LLC | ) **TO FED. R. CIV. P. 12(B)(6)** |
| Nrrm LLC dba CarShield | ) |
| John Doe Sender | ) |
| Defendants | ) |

# INTRODUCTION

COMES NOW Pro Se Plaintiff Joshua Lapin, responding in opposition to Defendant NRRM,

LLC's Motion To Dismiss Pursuant to FED. R. CIV. P. 12(b)(6).  One must pity for NRRM, LLC

("CarShield").  Flex Marketing Group, attempting to exonerate itself of Plaintiff's allegations, threw

alleged Advertisers Carshield and AAS under the bus by, *inter alia,* arguing the fringe position that

Flex didn't advertise its own products and therefore isn't liable for the same.  Carshield's long-time

partner AAS, in turn, threw Carshield under the bus by arguing that Carshield is the sole advertiser

in the spams at issue.  While Plaintiff argued in his opposition that Flex is liable for these spams,

1   and that AAS and Carshield are both advertisers, it speaks volumes that Flex declares Carshield to

2   be an Advertiser, and that AAS declares Carshield to be the sole Advertiser.  Carshield finds itself

3   backed in a corner by all other defendants, including its long-time partner American Auto Shield.

4   It further speaks even louder volumes that Carshield's two page 12(b)(6) motion does not pertain to

5   the merits of Plaintiff's claims (save the joinders), and merely attempts to "pick at" plaintiff's

6   standing and choice of law considerations related to standing, as if to say "All defendants are

7   pointing fingers at me, but even if I, CarShield did exactly as I am accused, Plaintiff's claims should

8   be dismissed on the following far-fetched technicalities."  Plaintiff responds to each and every

9   argument in turn as follows:

10                          <u>**ARGUMENT AND RESPONSES**</u>

11   **"Colorado law applies to Lapin's anti-spam claim and Colorado**

12   **does not recognize a private right of action for the email spamming alleged here."**

13   Setting aside that "Federal courts regularly decline to conduct fact-intensive choice of law analyses

14   at the motion to dismiss stage..." *F.D.I.C. v. First Interstate Bank of Denver*, 937 F. Supp. 1461,

15   1466 (D. Colo. 1996) "A definitive choice of law determination is inappropriate and premature at

16   this Rule 12 phase of the case stage" Id, quoting from *Feingold v. State Farm Mut. Auto. Ins. Co*.,

17   2012 WL 1106653," Kass's choice of law arguments, in accordance with the rest of the instant

18   motion, are not only weak...they are legally frivolous, and debunked as follows:

19          **"Colorado does not recognize a private right of action for the alleged spamming and**

20                  **indeed such laws violate Colorado public policy."**

21   Colorado is not the state with the most significant relationship with the unsolicited commercial

22   email spams, South Dakota is.  Colorado's public policy does nothing except reinforce the same to

23   be true.  Kass refers to Colorado's anti-spam law, Colorado's "Spam Reduction Act of 2008"

24   as his saving grace when its actually his achilles heel. The act states "(h) This section shall apply

25   when a commercial electronic mail message is sent to a computer located in Colorado or to an

26   electronic mail address that the sender knows, or has reason to know, is held by a Colorado

27   resident."  Considering plaintiff is a South Dakotan resident/domicile, Colorado's spam law outright

28

expresses its own disinterest in the matter.  Neither does the application of South Dakota law violate Colorado's public policy.  The same act states "The remedies, duties, prohibitions, and penalties of this subsection (4) are not exclusive and are in addition to all other causes of action, remedies, and penalties provided by law."  In summary, Colorado public policy actually accomplishes the following:  A)  Expresses its own disinterest in this matter, B) Serves as a statutory directive on choice of law, declaring its own remedies to be non-exclusive and in addition to other causes of action.  Kass (and Newman, from Flex's pending motion to dismiss) disrespect Colorado Public Policy far more than plaintiff ever has, by making weak arguments that Colorado is the state with the greatest relationship, despite A, and that Colorado's remedies shall displace the South Dakotan plaintiff's cause of action brought about by his home state, despite B.  See also, Restatement (Second) of Conflict of Laws s 6(1) "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law."

Accordingly, we can easily correct a false statement from Kass as follows "Colorado does not recognize a private right of action for the alleged spamming and indeed such laws ~~violate~~ **compliment** Colorado public policy [under the applicable facts, as applied to the instant matter]."

**"To market VSCs, CarShield uses third parties to contact consumers that have 'previously expressed interest in products or services' offered by CarShield."**

Plaintiff warrants, represents, and guarantees that to the best of his knowledge, he has NEVER expressed interest in Carshield's products or services. (see attached declaration in support).

However, for the sake of completeness and in preparation of a *likely but not certain* forthcoming motion for summary judgment as to the allegations against Defendant CarShield, Plaintiff plays 'devil's adequate' and argues that *even if* this were to be true, it would be a wholly inadequate defense against the same, for the following reasons:

A:  Under the CAN-SPAM Act of 2003 (Federal Anti-Spam law), e-mails of this nature are illegal regardless of any/all consent involved therein.

B:  Under the state-level cause of action, e-mails of this nature are only permitted if the "recipient" and the "advertiser" and have "preexisting or current business relationship" or if the "recipient" has

provided "direct consent" to the "advertiser."

C:  'previously expressing interest in products or services' is inadequate in the interest of establishing a 'preexisting or current business relationship' or 'direct consent' with the intention of turning a "Unsolicited commercial e-mail advertisement,"But even if the court

finds otherwise, Plaintiff has neither with CarShield nor any defendant herein.

D:  The statement that CarShield 'uses third parties to contact consumers that have 'previously expressed interest in products or services offered by CarShield.' is also demonstrably false.  Flex Marketing admits on its website, in its pitch to its so-called 'advertisers', that they should "Partner with [Flex] to send dedicated email ads to **our subscribers** and watch as new super-high-intent leads pour in. You can pay per impression, click, lead, or sale."  [Exhibit A] While Plaintiff is not, nor ever has been, a 'subscriber' of Flex Marketing Group, this statement demonstrates that Flex uses its own sources of email addresses, and then promotes its "advertisers"  through the use of those spams, to those email addresses, as opposed to utilizing the advertiser [CarShield's] own list, as wrongly implied by Kass.  Flex also advertised 50+ other advertisers in spams complained of in the related cases in similar fashion, further demonstrating the independence of Flex's lists (which it appears to be misleadingly calling 'subscribers'), from CarShields purported '[people who] previously expressed interest in products or services offered by CarShield.'  As to Defendant John Doe, in some of the 'Hammer UCE's' complained of, Doe uses the now-infamous address in the bottom of the UCE, "8595 Pelham Rd,,546,Greenville,South Carolina,29615."  This address has been associated with MANY spams sent on behalf of MANY "advertisers," some of which plaintiff is suing over in Lapin V Doe 1:2022cv04144.  Similarly to Flex, John Doe is alleged to send out many spams on behalf of many 'advertisers,' including but very much NOT limited to CarShield. For reference, PDF preservations of all the emails associated with this same address are attached hereto as Exhibit B.  The court will notice that all of the emails in Exhibit B have the same address in the footer, and were all sent to Plaintiff's email address "thehebrewhammerjosh@gmail.com," and how the vast marjority of them advertise someone other than CarShield / AAS.

Therefore, DOE's list(s) are independent of CarShield and are not contacted in response to 'previously express[ed] interest in products or services offered by CarShield.'

Quoted terms from B-D have the following definitions from SDCL 37-24-41:

"Advertiser," a person or entity that advertises through the use of commercial e-mail advertisements;

"Preexisting or current business relationship," as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser.

"Recipient," the addressee of an unsolicited commercial e-mail advertisement. If an addressee of an unsolicited commercial e-mail advertisement has one or more e-mail addresses to which an unsolicited commercial e-mail advertisement is sent, the addressee is deemed to be a separate recipient for each e-mail address to which the e-mail advertisement is sent;

"Direct consent," the recipient has expressly consented to receive e-mail advertisements from the advertiser, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative;

**"Lapin is a "digital nomad" and in a "different country every 30 days." Compl. ¶¶ 2, 39. He is a South Dakota resident based on a postal box and a few government issued documents; he does not dwell in South Dakota."**

Plaintiff's comprehensive and overly-sufficient documentation of his South Dakota domicile/residency has been explained in his responses to the motions to dismiss of Flex and AAS, and Plaintiff joins in his own responses to those 12(b)(6) motions, and exhibits in support therewith, to substantiate his residency and domicile for the third time.  (Exhibit S and Exhibit U of Dkt. 30) Setting aside Kass's inadvertent admission that Plaintiff is a South Dakota resident, which sharply contrasts with Flex's argument to the contrary, Mr. Kass is trying to impose a standing requirement into the cause of action which does not exist.  To sue under SDCL 37-24-41 *et seq,* one is not required to "dwell" in South Dakota.  To the extent that one is a legal resident of South Dakota, standing under the unambiguous language of 37-24-41(14) is satisfied: [bold/underline added]

(14)    "South Dakota electronic mail address" or "South Dakota e-mail address," any of the
following:

    (a)    An e-mail address furnished by an electronic mail service provider that sends bills
for furnishing and maintaining that e-mail address to a mailing address in this
state;

    (b)    An e-mail address ordinarily accessed from a computer located in this state; or

    (c)    **An e-mail address furnished to a resident of this state;**

As Flex marketing group argued, and Plaintiff agreed, the 'place where the injury occurred' is

fortuitous in this matter.  Further in support, the CAN-SPAM Act ("Federal Anti-Spam Law")

admits in its congressional findings that "an electronic mail address does not specify a geographic

location" as part of its effort to establish the need for a national, uniform standard for commercial

email regulation.  In turn, as part of this effort, CAN-SPAM preempted all state-spam laws ", except

to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion

of a commercial electronic mail message or information attached thereto." *Id.*  Put together, the

fortuitous location of plaintiff at the time his "South Dakota electronic mail addresses" SDCL 37-

24-41(14), WHEREAS such email addresses are not assigned to a geographic location, WHEREAS

CAN-SPAM welcomes the states to assist the national effort in enforcing falsity and deception in

commercial electronic mail, Mr. Kass's Flex-contradicting argument that plaintiff does not meet a

non-existent element of standing under SDCL 37-24-41, such that he does not "dwell" in South

Dakota, is wholly uncompelling and unsupported by the national/state legislative framework to

which he rarely cites.  The states are free to regulate 'falsity and deception' in commercial email as

they see fit.  Like many states, South Dakota provides this right of action to its residents, and it does

not impose a "dwelling" requirement, nor would it...as such a requirement would be nonsensical,

contrary to the nature of the tort, the policies of other states, and the national framework related to

the same.

**CarShield joins Flex's motion to dismiss, Section II C-D (see Doc. No. 20) and AAS's**

**motion to dismiss, "Argument" Sections I and III**

To the extent Kass joins specific sections of Flex and AAS's motion to dismiss, and certain arguments within, plaintiff joins in his own responses to the same, in addition to "fresh arguments" raised in the instant response.  This also applies to Kass's argument in the instant motion that "Flex and AAS properly summarize and apply the law regarding choice of law."

### Conclusion

CarShield has been thrown under the bus by Flex and AAS.  Instead of denying what it cannot deny, or defending what it cannot defend,CarShield makes easily disprovable justifications for its wrongdoings and unsuccessfully attempts to weaken plaintiff's standing.  Colorado's public policy and laws, national public policy and law,  and the Restatement (second) support the application of Plaintiff's cause of action, and reinforce the mere fortuitousness of Plaintiff's location at the time the spams were received.  Further, Federal Law's national,uniform standard for email marketers reinforces the predictability of result and protection of justified expectations, rendering it even more fair to apply South Dakota law to the instant Defendants.  Carshield's statement that it "uses third parties to contact consumers that have 'previously expressed interest in products or services' offered by CarShield" appears to be a provable lie, and Plaintiff has standing under the cause of action even if he does not "dwell" in South Dakota.  Carshield finds itself backed into a corner.  Checkmate.

### Certificate of Service

This motion will be served onto all Defendants' counsel through CM/ECF, and by email as stipulated.

/s/ Joshua A. Lapin
Joshua A Lapin
Pro Se Plaintiff 8/10/22

_____

        Signature