# Exhibit C

Joshua Lapin
Pro-Se Plaintiff
Fax: (307) 655-1269
thehebrewhammerjosh@gmail.com

Colorado Christian University C/O Thomas N. Scheffel Esq. C/O TNS Associates P.C. by fax 303-759-9726

Colorado Christian University C/O Thomas N. Scheffel Esq. C/O TNS Associates P.C. by email: tscheffel@tnslaw.com

Colorado Christian University by fax: 303-963-3231

Colorado Christian University Office of The President by fax 303-963-3351

**NOTE: Faxed copies do NOT contain aforementioned exhibits, only the emailed copies do.**

2/4/2022

# Pre-Litigation Demand Letter

**Synopsis:**

The de-facto Plaintiff received no less than 43 Unsolicited Commercial Emails ("UCE's") advertising Colorado Christian University, ("CCU"), advertising their university degree programs, and online classes associated with the same. 39 of the 43 UCE's are attributable to a John Doe sender who uses the domains BuzzBarrelReview.com, emails-jobsdelivered.com, Entirelybelieve.com, expectcarecare, JobsDeliver.com, JobSharlNL.com, NationalSurveysOnline.com, *inter alia,* which were sent through mailing platforms of Infusionsoft dba Keap OR Lyris Inc. On the other hand, 4 of the UCE's are attributable to a different John Doe Sender "rumorfox.com", which were sent through the mailing platform Campaigner, which is attributable to J2 Global Inc, J2 Cloud Services LLC, [and affiliated entities]. In total, 43 UCE's, which are the subject of this demand and pending litigation.

**Cause of Action:**

SDCL 37-24 *et seq* refers to South Dakota's restrictions on Unsolicited Commercial Electronic Mail. Do note that plaintiff maintains status as a legal resident and domicile of South Dakota. The bolded portions of SDCL 37-24-47 are the focus of this demand and of the anticipated litigation as it relates to Defendant Colorado Christian University specifically:

**37-24-47. Prohibited commercial e-mail advertisements.**
No person may advertise in a commercial e-mail advertisement either sent from South Dakota or sent to a South Dakota electronic mail address under any of the following circumstances:
    (1)   **The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party;**
    (2)   **The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information;**
    (3)   The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

A recipient of UCE's containing one or more violation of 37-24-47, is granted a private right of action against those who **advertise** in those email messages, in the form of actual damages and/or statutory liquidated damages of $1000/email in breach, in addition to reasonable fees and costs:

**37-24-48. Actions for damages--Attorney's fees and costs--Reduction of damages under certain circumstances.**
The recipient of an unsolicited commercial e-mail advertisement, an electronic mail service provider, or the attorney general may bring an action against any person that violates §37-24-42, 37-24-44, 37-24-45, 37-24-46, or 37-24-47 and may recover either or both of the following:
    (1)   Actual damages; or
    (2)   **Liquidated damages of one thousand dollars for each unsolicited commercial** e-mail advertisement transmitted in violation of such section, up to one million dollars per incident.
The recipient, an electronic mail service provider, or the attorney general, if the prevailing plaintiff, may also recover reasonable attorney's fees and costs.
However, there may be no cause of action under this section against an electronic mail service provider that is only involved in the routine transmission of the e-mail advertisement over its computer network.
If the court finds that the defendant established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of §§ 37-24-41 to 37-24-48, inclusive, the court shall reduce the liquidated damages recoverable under this section to a maximum of one hundred dollars for each unsolicited commercial e-mail advertisement, or a maximum of one hundred thousand dollars per incident.

**Evidence:**

In Exhibit A, you will see PDF preservations of all 43 UCE's, the senders of whom allegedly utilized the email marketing platforms of Infusionsoft dba Keap OR Lyris Inc [for 39 UCE's] AND the email marketing platforms of J2 Global [and related entities] [for 4 of the UCE's] to send the spams.

The first problem is the use of a third party's domain name without the permission of the third party, as it relates to SDCL 37-24-47(1): "The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party". In most of these UCE's, each and every clickable link including the main call to action is associated with "infusion-links.com", "uptilt.com", "keap-link003.com", "keap-link005.com", "emaildir2.com", *inter alia*. The clickable links containing the words infusion or keap are attributable to

DocuSign Envelope ID: 5EBA1585-8832-4AA0-8449-BBCB944F84BF

Infusionsoft Inc dba Keap and their email marketing platforms.  The clickable links associated with uptilt.com are attributable to the EmailLabs platform, owned by Lyris Inc.  Finally, emaildir2.com is attributable to Campaigner, which is owned and operated by J2 Global [related entities].

As it relates to Infusionsoft Inc dba Keap, Keap's "Acceptable Use Policy" [Exhibit B], expressly states that "All email lists used in conjunction with the services provided by Us are required to be 100% solicited (opt-in) lists…" and that "Bartering, purchasing or renting lists of names and sending e-mails to those people is strictly prohibited."

As it relates to Lyris Inc [uptilt.com] links, see Aurea Email Marketing Terms of Service for SAAS…pdf.  [Exhibit C] In Paragraph 2, subsection 2, you will see "Customer may not use the Services to send unsolicited email…", and "...Customer's email will be considered unsolicited if Customers membership addresses are not 100% opt-in by Customer's members.  If Customer's email addresses came from harvesting, a purchased email list, another mailing list (even with the approval of the other list owner or service provider), or are compiled by any method other than by direct subscription…then [all such messages] will be considered spam under these Terms of Use."

As it relates to Campaigner, "Campaigner" has a clear anti-spam policy [Exhibit D] which prohibits the the use of its platform for unsolicited email, and only in connection with consent-based marketing, "Campaigner and its partners (those who make the Campaigner products available to their customers), only support lawful, consent-based email marketing practices." and "...using Campaigner® to send UCE is not permitted."

In Campaigners Terms and Conditions [Exhibit E], its clients agree, amongst other things, to abide by Campaigners Anti-Spam policy.  The terms and conditions also expressly states, "The End-User warrants that it shall not: (a) use the Dotdigital Services in any way so as to bring the Dotdigital Services or dotdigital into disrepute; (b) use the Dotdigital Services to send unsolicited or unauthorised advertising, promotional material, 'junk mail', 'spam', 'chain letters' or pyramid schemes including but not be limited to illegal goods or dotdigital Services, internet lead-gen, multi-level marketing, affiliate marketers, marketing or sending of commercial messages without proper express consent (unless agreed by dotdigital otherwise), or payday loans; (c) forge headers or otherwise manipulate identifiers in order to disguise the origin of any content or materials transmitted through the Dotdigital Services; (d) use the Dotdigital Services in a manner which is unlawful, harmful, threatening, abusive, harassing, tortious, indecent, obscene, libellous, menacing or invasive of another person's privacy"

The sending domains in most of the UCE's appear to be related to an unknown entity who appears as "DLZ Offers" in WHOIS data [Exhibit F].  Plaintiff has been unable to identify the business entity behind DLZ Offers, despite exhaustive efforts to hold them accountable in

connection with the sending of many spam emails, including UCE's unrelated to CCU as well. The spam associated with the second sender and with rumorfox.com, whom have similarly concealed their data in whois [Exhibit G] are also of interest to Plaintiff as it relates to UCE's which have nothing to do with CCU.

Even in UCE's in which the from line accurately identifies the advertiser, such as "CCU" or "Colorado Christian University", etc, the sending domain the from line is untraceable to the sender in each and every UCE, regardless if that particular email is attributable to "John Doe DLZ-Offers" or "John Doe Rumorfox" as described in the beginning of this demand.  This untraceability of the sending domain alone constitutes a forged header concealing the identity of the marketer that sent the spam, for which the advertiser ("Colorado Christian University") is strictly liable.  See 9th circuit binding precedent *Greenberg V Digital Media Solutions LLC*

 Even if Colorado Christian University did not directly send these UCE's, it did advertise in them, likey C/O its marketing partners, and therefore [CCU] caused those UCE's to be transmitted.  Therefore, if the senders abused the Campaigner and EmailLabs platforms to send UCE's, such senders used Infusionsoft and Lyris's products and domain names in the emails advertisements without those third party's permission, and in clear violation of the senders agreements with those third party's, and CCU advertised in those UCE's.

**Plaintiff Intends to Sue**

If CCU and Plaintiff are unable to resolve this matter outside of court, Plaintiff intends to sue CCU individually or as part of a larger suit involving the person(s) or business(es) who sent these emails on CCU behalf.

## Settlement Offer to Resolve Dispute Outside of Court

43 UCE's X $43,000 statutory liquidated damages = $43,000 for SD Anti-Spam Law.

 Plaintiff is unable to settle for an amount lower than $43,000 due to constraints of the "one satisfaction rule", which *may* prevent him from collecting the remaining amount from the person or entity that sent these spams.

Nonetheless, due to unusual surrounding circumstances, Plaintiff conditionally offers to settle the matter for $34,400 IF CCU is able and willing to disclose to plaintiff:

A:  the true person or true business entity who sent these spams, who is also attributable to the domains BuzzBarrelReview.com, DZLOSurveys.com, emails-jobsdelivered.com,

entirelybelieve.com, expectcarecare.com, JobsDeliver.com, JobSharknl.com, NationalShopperSurvey.com, NationalSurveysOnline.com ("first sender") AND

B: To similarly disclose the identity of the true persons or businesses who sent the second set of spams, attributable to the second set of emails, attributable to the second sender, and attributable to rumorfox.com ("second sender").

Please note Plaintiff has made this same offer to additional Advertisers associated with the same two John Does ("Senders") associated with these domains, so as soon as one of the Advertisers, CCU or anyone else, accepts a settlement offer from Plaintiff in exchange for the identity of the John Doe Senders, such offer will be void to anyone else considering that offer.

This settlement would include an MNDA and a mutual release. However, such release must allow Plaintiff to use the information about the John Doe ("Senders") to pursue action against this sender for UCE's they have sent Plaintiff outside of UCE's in which CCU is being advertised.

Contact me exclusively by email at thehebrewhammerjosh@gmail.com or by fax at (307) 655-1269.

Spam Recipient,

Joshua Lapin

*DocuSigned by:*
*Joshua Lapin*
1DE3D18A0C384C1...

2/4/2022