UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01543-CMA-SKC

JOSHUA LAPIN,

      Plaintiff,

v.

AMERICAN AUTO SHIELD, LLC, et al.,

      Defendants.

**DEFENDANT FLEX MARKETING GROUP, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(B)(2) AND RULE 12(B)(6)**

## INTRODUCTION

In response to Flex's motion, Lapin does not show that Flex purposefully directed activity at Colorado relating to this case and cannot meet the Tenth Circuit standard for personal jurisdiction in email cases. Nor did he address Flex's points about why jurisdiction is unreasonable. For both reasons, the Court lacks personal jurisdiction and should dismiss Lapin's claims against Flex.

Additionally, regardless of which choice-of-law standard is applied, Colorado law should apply to this dispute. Since Colorado law denies standing to a private litigant like Lapin, he did not state a claim for relief. Even under South Dakota law, Lapin fails to address how the statute imposes liability on an "initiator" rather than an "advertiser." Instead, he relies on cases involving California's email law, which has a legislative history that is not germane to the South Dakota statute. Since Lapin concedes Flex did not advertise in the emails at issue, Flex cannot face liability under the South Dakota law. The Court should dismiss the case against Flex for failure to state a claim.

1

# REPLY

### A. Flex's limited Colorado contacts do not subject it to personal jurisdiction.

Lapin agrees with Flex that he fails to allege—and this Court does not have—general personal jurisdiction over Flex. (*See* Opp. at 1:27-2:3.) Thus, the only jurisdictional issues before the Court are (1) whether Flex's case-specific connections to Colorado satisfy the minimum contacts threshold and (2) if so, whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. *See Old Republic Ins. Co. v. Con'l Motors, Inc.*, 877 F.3d 895, 909 (10th Cir. 2017) (citing *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)).

In response to the first point, Lapin relies on red-herring arguments that fall short of the Tenth Circuit's "purposeful targeting" standard in *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). And Lapin's opposition does not address the *Old Republic* factors whatsoever, effectively conceding Flex's second point: that haling Flex into Colorado would be inappropriate even if sufficient minimum contacts existed. The Court should dismiss Lapin's claims against Flex for lack of personal jurisdiction.

### 1. Lapin's contentions about Flex's sports-betting license are irrelevant because he concedes Flex is not subject to general jurisdiction.

In moving for dismissal, Flex candidly disclosed that it had applied for and obtained a Colorado sports-betting vendor minor license. (*See* Dkt. 21-1 at ¶ 4.) The license is unrelated to emails in this case. (*Id.*) Thus, that activity is irrelevant to evaluating specific personal jurisdiction—which turns on case-specific contacts. The parties agree that that license and $200 of revenue generated do not give rise to general jurisdiction. (*See* Opp. at 1:27–2:3.) Accordingly, Lapin's contentions and speculations about Flex's license are irrelevant to the only issues before the Court.

### 2. Lapin's remaining arguments ignore the Tenth Circuit standard for evaluating minimum contacts in the context of email marketing.

The rest of Lapin's personal-jurisdiction arguments boil down to two contentions: (1) that the inclusion of a co-defendant's physical address in some of the emails at issue somehow creates sufficient minimum contacts for Flex; and (2) that Flex's alleged conduct is simultaneously not the "center of gravity" yet was sufficient to create a "focal point" in Colorado. (*See* Opp. at 3:18-4:2; 4:3-6:13.) Neither argument's internal logic is persuasive. The bulk of Lapin's citations are to non-email cases involving a direct link between an in-state plaintiff and out-of-state defendant—which is not the case here— and he does not explain why they apply.[1] More importantly, Lapin's arguments are precluded under the Tenth Circuit's *XMission* decision which addresses the exact issue before the Court. *See* 955 F.3d 833 (analyzing sufficient minimum contacts in the context of a national email-advertising campaign).

Lapin's only citation to a case involving jurisdictional analysis of internet activity is *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008). But that case is inapplicable. In *Dudnikov*, the defendant sent a letter to eBay in California asking it to stop an online auction by a Colorado resident. *Id.* at 1069. The plaintiff sued for harm caused by the defendant's actions. *Id.* at 1073. The Tenth Circuit held in favor of jurisdiction because the defendant's alleged actions gave rise to an intent to cause harm in Colorado since it knew that that is where the plaintiff was conducting the

---

[1] *See, e.g.*, *Art Corp. Sols., Inc. v. Laney*, No. 14-CV-03086-RBJ, 2015 WL 783740, at *3 (D. Colo. Feb. 24, 2015) (finding specific personal jurisdiction over plaintiff chiropractor based on direct ongoing business relationship with defendant); *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 96 (10th Cir. 2012) (finding no personal jurisdiction over defendant mining companies because they did not purposefully direct activities to Colorado); *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1055 (10th Cir. 2008) (finding specific personal jurisdiction over foreign nutritional-supplement provider based on intentional direct dealings with plaintiff in breach-of-contract case).

auction from. *Id*. at 1082. But even in *Dudnikov*, the Tenth Circuit cautioned that "the mere foreseeability of causing an injury in the forum state is, standing alone, insufficient to warrant a state exercising its sovereignty over an out-of-state defendant." *Id.* at 1077. In contrast, the claims at issue here involve, at most, the mere foreseeability of harm.

In *XMission*, the Tenth Circuit expressly declined to extend *Dudnikov* to allegations like those at issue here involving a national email-marketing campaign. *See XMission*, 955 F.3d 833. The Tenth Circuit specifically rejected the application of the same basketball bank-shot analogy that Lapin urges here. *Id.* at 844–45. It also rejected Lapin's secondary "stream of commerce"-plus jurisdiction argument. *See id.* at 843.

Instead, the Tenth Circuit applied the reasoning of *Shrader v. Biddinger*, which noted that internet activities such as mass emailing are "peculiarly non-territorial" because "the internet operates 'in' every state regardless of where the user is physically located." *XMission*, 955 F.3d at 844–45 (applying *Shrader*, 633 F.3d 1235, 1240 (10th Cir. 2011)). That is exactly the case here: Lapin does not contest Flex's affidavit-supported claim that the emails were national in nature. As such, they are not targeted to Colorado more than any other state. If anything, Lapin's claim for jurisdiction is even weaker than the claim rejected in *XMission* since Lapin himself is not a forum resident and does not allege any harm occurred here. Under the *XMission* standard, the alleged activities at issue here do not give rise to sufficient minimum contacts for the Court to assert jurisdiction over Flex, and the Court should dismiss the case on that basis.

    **3.    Lapin does not address Flex's argument that even if minimum contacts existed the Court should still decline to exercise personal jurisdiction under these specific circumstances.**

Even if the Court found sufficient minimum conducts existed to justify specific personal jurisdiction, it would still need to consider whether haling Flex into Colorado would be reasonable. *See Old Republic*, 877 F.3d at 909; *see also Pro Axess*, 428 F.3d

at 1280. This involves applying the five-factor test from *Old Republic* and *Pro Axess*. (*See* Dkt. 20 at 7-8.) Asserting personal jurisdiction would be particularly unreasonable here where a non-resident plaintiff (Lapin) seeks relief from a non-resident defendant (Flex) and asks the Court to enforce another state's laws (South Dakota). Here, all five factors either cut sharply in Flex's favor or are, at best, neutral. Lapin's opposition offers no discussion or rebuttal of Flex's points on the matter, and the Court is not obligated to "make a party's case for it." *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). The Court should decline to exert personal jurisdiction even if it concludes Flex has sufficient minimum contacts.

**B.      The Court should dismiss this case because Lapin fails to state a claim under either Colorado law or the South Dakota law that Lapin pleaded.**

Flex's motion to dismiss included two independent arguments as to why Lapin failed to state a claim for relief against Flex. First, Colorado law—not South Dakota's—should apply to this dispute. But Colorado's commercial-email statute, C.R.S. § 6-1702.5, does not provide a private right of action for an individual email recipient. So Lapin lacks standing to sue Flex over allegedly unlawful emails he received.

Second, even under the South Dakota commercial-email statute, S.D. Codified Law § 37-24-47 ("SD Email Law"), Lapin's Complaint fails to state a claim for relief because it applies only to parties who "advertise" in commercial email. Here, since Lapin admits in the Complaint that Flex didn't "advertise," he did not state a claim.

**1.      Lapin does not dispute Flex's application of the choice-of-law standard specific to multi-state torts but asks the Court to consider more general choice-of-law principles that also indicate Colorado law applies.**

Lapin did not respond to Flex's choice-of-law analysis focused on the legal standard used by Colorado courts to determine which jurisdiction's laws should apply in multi-state disputes involving alleged online torts, Restatement (Second) of Conflict of

Laws § 145. *See AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo. 2007) (Section 145 "provides that the most significant relationship to the occurrence and parties test shall be applied to a cause of action sounding in tort"). Instead, he asks the Court to apply the generic principles set forth in "general terms" for determining choice of law provided under Section 6 of the Restatement. *See AE, Inc.*, 168 P.3d at 510.

But as with the Section 145 factors Flex analyzed, each of the six principles enumerated in Section 6 is either neutral or indicates that Colorado law should apply:

- **"the needs of the interstate and international systems"**

Under the first principle, where a tort occurred in Colorado, the needs of the interstate and international systems weigh in favor of applying Colorado law because applying the law of another state would not "further harmonious relations between states." *Williams v. Allstate Prop. & Cas. Ins. Co.*, No. 19-CV-03368-REB-KLM, 2020 WL 9432923, *5–6 (D. Colo. June 9, 2020). Here, Lapin alleges that the tort occurred in Colorado or New York. (*See* Compl. ¶¶ 3, 4, 7, 8, 14, 15a–15f, 39, 45, 46.) There is no alleged conduct in South Dakota, so Colorado or New York law should apply.

- **"the relevant policies of the forum and other interested states"**

The second principle favors Colorado law, as, according to Restatement § 6, comment (f), "In general, it is fitting that the state whose interests are most deeply affected should have its local law applied." Lapin seeks to impose liability against Colorado businesses for conduct he alleges took place in Colorado, while, in contrast, there are no allegations about any conduct taking place in South Dakota.

- **"protection of justified expectations"**

The third principle indicates that Colorado law should apply, as, according to Restatement § 6, comment (g), "it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform

6

to the requirements of another state." Lapin's Complaint focuses on how all the defendants allegedly conducted business in or targeted Colorado. It would be unfair to hold them accountable to the laws of another state for a lawsuit filed in Colorado.

- **"the basic policies underlying the particular field of law"**

The fourth principle is neutral. Restatement § 6, comment (h) states that this principle is particularly important in situations where the policies of the interested states are largely the same but have minor differences between their local law rules. The goal is for the court to apply the local law of the state that will best achieve the basic policy underlying the field of law involved. *Id.* Given that Colorado and South Dakota both have commercial-email statutes, these policy goals can be accomplished by applying either state's law.

- **"predictability and uniformity of result"**

The fifth principle is meant to discourage forum shopping. *See AE, Inc.*, 168 P.3d at 511. Lapin sued Flex in Colorado over emails advertising a Colorado business. His proposal to apply South Dakota law could result in Colorado businesses being sued in Colorado courts under other states' laws for the same email-marketing conduct.

- **"ease of determination and application of the law to be applied"**

The sixth principle is neutral; the Court is readily able to apply either state's law.

Separately, Lapin argues that his South Dakota residency is valid despite him almost never being in South Dakota. He argues that his itinerant lifestyle doesn't undermine his claim to South Dakota residency because he has never formed an intention to remain indefinitely in a new jurisdiction. This argument is misplaced. The choice-of-law framework considers where the injury occurred, and not the technical legal residency of the plaintiff. *See Shrader v. Biddinger*, No. 10-CV-01881-REB-MJW,

7

2012 WL 976032, at *9 (D. Colo. Feb. 17, 2012), *report and recommendation adopted sub nom. Shrader v. Beann*, No. 10-CV-01881-REB-MJW, 2012 WL 976031 (D. Colo. Mar. 21, 2012), aff'd, 503 F. App'x 650 (10th Cir. 2012). Flex's Motion expressly raised this argument, but Lapin's Opposition didn't address it. Since no injury occurred in South Dakota, the law of South Dakota should not apply to this action.

C. **Lapin fails to allege that Flex "advertised" in commercial email, as required for liability under the South Dakota commercial-email statute**

Flex's Motion also argued that even under the South Dakota commercial-email statute, Lapin's Complaint fails to state a claim for relief because it applies only to parties who "advertise" in commercial email. Lapin admits that Flex didn't "advertise." Flex relies on two main arguments: (1) a 2017 California federal-court decision, *Blanchard v. Fluent, Inc.*, No. 17-CV-04497-MMC, 2017 WL 4224768 (N.D. Cal. Sept. 22, 2017), which found that the identical California email statute does not impose liability on "initiators," only advertisers; and (2) an analysis of the South Dakota statute under South Dakota's legal standard for statutory interpretation. Lapin's response to the first point is mistaken and he failed to address the second, much more significant point.

1. **Lapin's attempt to distinguish *Blanchard* is mistaken.**

Lapin's opposition attempts to distinguish *Blanchard* in three ways. First, he refers to two earlier (2009 and 2013) California federal-court decisions[2] interpreting the California statute. (Opp. at 8.) He claims these earlier cases "debunk" *Blanchard*, even though they predate it by years. He also points to California state-court decisions which concluded that an "initiator" of commercial email can be held liable for their role in sending third-party advertisements despite not advertising the sender's own services.

---

[2] *See Hypertouch, Inc. v. Azoogle.com, Inc.*, No. C-08-4970 MMC, 2009 WL 734674 (N.D. Cal. Mar. 19, 2009); *Moreland v. Ad Optimizers, LLC*, No. 13-00216 PSG, 2013 WL 1410138 (N.D. Cal. Apr. 8, 2013).

8

But the conclusions drawn in these cases rely on analysis of California legislative history, and there is no legislative history for the South Dakota statute.

Second, Lapin argues that even under *Blanchard* he has sufficiently alleged Flex's involvement with the emails. Specifically, he argues that *Blanchard* contemplated imposing liability against an email initiator who "conspired" to advertise in the allegedly unlawful email. Here, Lapin argues that he has alleged such a conspiracy involving Flex by claiming that the emails contain links which, when clicked, are initially directed to links associated with Flex-controlled domain names before being redirected to the ultimate advertiser. (Opp. at 11.) He argues that the "spams would not function, nor would the Advertiser be able to display their landing page, without Flex's redirecting domains connecting the recipient from the 'click' of the call-to-action to the eventual landing page.…" Lapin makes no effort to link this argument to the S.D. Email Law in a way that would explain how these alleged actions constitute a "conspiracy" to advertise that's somehow different from actions to "initiate" email on behalf of an advertiser.

Third and finally, Lapin argues that Flex "contractually consented" to liability as an "advertiser" in third-party agreements associated with registering domain names for use in initiating commercial emails and in its use of Keep and Aureasoft's platforms. (Opp. at 12.) Lapin argues that the domain-registration agreements applicable to the domain names used in connection with the emails—both in "from" addresses and in embedded tracking links—required Flex to agree that it "shall accept liability for harm caused by wrongful use" of the domain name. He also claims that Keep's and Aureasoft's terms provide that Flex allegedly agreed to be responsible for any legal violations arising from use of their respective services. But the language Lapin cites do not provide that Flex agreed to be liable as if it were an "advertiser" under state email laws, much less that it agreed to be liable to third parties like Lapin, which it did not.

9

**2.   Lapin failed to address Flex's argument that under South Dakota principles of statutory interpretation, the SD Email Law only applies to "advertisers"**

Lapin's Opposition completely fails to address Flex's argument about interpreting South Dakota's statute under South Dakota law. This alone should be dispositive.

The S.D. Email law defines both "advertiser" and "initiate." *See* S.D. Codified Laws §§ 37-24-41(1),(2); 37-24-41(8). But it only imposes liability against parties who "advertise in" commercial email. S.D. Codified Laws § 37-24-47. Where the legislature "used different words within the same chapter, it obviously intended different meanings." *State v. Marshall*, 495 N.W.2d 87, 88–89 (S.D. 1993) (*citing Border States Paving v. Dept. of Revenue*, 437 N.W.2d 872 (S.D. 1989)). There is no legislative history to consult, and under South Dakota law, courts may not read language into a statute "that is simply not there." *State v. Buffalo Chip*, 951 N.W.2d 387, 396 n.15 (S.D. 2020). Because Flex did not "advertise," Lapin's claims must be dismissed.

## CONCLUSION

The Court should dismiss this case for lack of personal jurisdiction because Flex did not purposefully direct activity at Colorado, as required by the Tenth Circuit's *XMission* standard for personal jurisdiction in email cases. More importantly, the Court should dismiss this case for failure to state a claim because Colorado law applies, and Lapin lacks standing to sue under the Colorado statute. Even if South Dakota law applied, since Lapin admits Flex is not an advertiser, he fails to state a claim.

To the extent the Court agrees the case should be dismissed for both lack of personal jurisdiction and failure to state a claim, Flex respectfully requests that the Court enter an order dismissing his claims on both grounds to provide finality to the parties and prevent additional litigation.

<table>
<tr><td>

s/ Derek A. Newman
*__Derek A. Newman__*
Newman Du Wors LLP
2101 Fourth Ave., Suite 150
Seattle, WA 98121
Telephone: (206) 274.2800
Fax: (206) 274-2801
Email: dn@newmanlaw.com
Attorney for Defendant
Flex Marketing Group LLC

</td><td>

*Craig R. May*
*Charles W. Gibson*
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244.1800
Fax: (303) 244.1879
Email: may@wtotrial.com,
gibson@wtotrial.com
Attorneys for Defendant
Flex Marketing Group, LLC

</td></tr>
</table>

11

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 15th day of August, 2022, served the foregoing DEFENDANT FLEX MARKETING GROUP, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(B)(2) AND RULE 12(B)(6) via the method described below:

Joshua Lapin
401 E. 8th St.
STE 214, PMB 7452
Sioux Falls, SD 57103
via Email:  thehebrewhammerjosh@gmail.com

*Pro se* Plaintiff

Jeffrey H. Kass
Lewis Brisbois Bisgaard & Smith
1700 Lincoln Street, Suite 4000
Denver, CO 80203
via the Court's CM/ECF system

Counsel for Defendant
NRRM LLC d/b/a CarShield,
and American Auto Shield, LLC


s/ Erika Cueva
Erika Cueva